39782. HENDERSON v. THE STATE.

HILL, Chief Justice.

Walter Lee Henderson was indicted, tried and convicted for murder and carrying a pistol without a license. He received a life sentence, with 12 months probation on the pistol charge.

Evidence presented at the trial showed that the defendant shot the victim, Curtis Lee, two times early in the morning of August 14, 1982, outside Jones Cafe near Arlington, Georgia. At trial, the

defendant claimed he shot the victim in self-defense. On appeal, defendant raises two enumerations of error. Because we reverse, there is no need to set forth the facts at length other than to say that the evidence was sufficient to authorize the jury to find the defendant guilty.

1. In his first enumeration of error, the defendant contends that the trial court erred in limiting voir dire of the jurors by refusing to allow the defendant to ask the panel whether members of the jurors' immediate families had ever worked for law enforcement agencies.

He correctly points out that the right to a jury trial is guaranteed by both our state and federal constitutions. As was said in *Bradham v. State,* 243 Ga. 638, 639 (256 SE2d 331) (1979), quoting *Melson v. Dickson,* 63 Ga. 682, 686 (1879), "[A]n impartial jury is the cornerstone of the fairness of trial by jury."

The right in criminal cases to examine each prospective juror in order to secure an impartial jury is set out in the Code at OCGA § 15-12-133 (Code Ann. § 59-705), which provides in part: "In the examination, the counsel for either party shall have the right to inquire of the individual jurors examined touching any matter or thing which would illustrate *any interest of the juror in the case, including* any opinion as to which party ought to prevail, the relationship or acquaintance of the juror with the parties or counsel therefor, *any fact or circumstance indicating any inclination, leaning or bias which the juror might have respecting the subject matter of the action* or the counsel or parties thereto, and the religious, social, and fraternal connections of the juror." (Emphasis supplied.)

This Code section is a source of concern to our trial judges, both because of the method of examining prospective jurors it authorizes and because of the scope of such examination. We deal here with the latter aspect. One difficulty as to the scope of examination is that the Code section is written in general terms.

Illustrative of such generality and the problems it causes, is *Frazier v. State,* 138 Ga. App. 640, 643 (227 SE2d 284) (1976), where it was held that the phrase "respecting the subject matter of the suit [action]" in OCGA § 15-12-133 (Code Ann. § 59-705), supra, limited voir dire examination to the "particular suit" being tried. Accord, *Hill v. State,* 221 Ga. 65, 69 (142 SE2d 909) (1965); *Curtis v. State,* 224 Ga. 870, 871 (165 SE2d 150) (1968). On the other hand, it was held in *Craig v. State,* 165 Ga. App. 156, 157 (299 SE2d 745) (1983), that it is the type of suit (a drug case), not the particular suit, which controls the scope of voir dire.

It should be kept in mind that the larger purpose of the Code section is to enable counsel to identify those prospective jurors counsel desires to remove from the panel by use of peremptory strikes

as opposed to challenges for cause.

Referring to this Code section in *Bethay v. State,* 235 Ga. 371, 377 (219 SE2d 743) (1975), we said that it ". . . is generally considered as permitting a broad range of questions in examination of prospective jurors. We should keep the Code section in mind however, as opposed to the generalization. For example, that section permits inquiry not as to every matter and every thing, but as to 'any matter or thing which would illustrate any interest of the juror *in the cause* . . .' (Emphasis supplied.)" Not every matter and every thing is the subject of permissible inquiry under the Code section.

Accordingly, it has been held not to be error for the court to refuse to allow defense counsel in criminal cases to ask questions concerning the law and its application to the case on trial, specifically the presumption of innocence, *Pinion v. State,* 225 Ga. 36 (4) (165 SE2d 708) (1969). ("Do you, at the moment believe the defendant innocent?"); *McNeal v. State,* 228 Ga. 633 (3) (187 SE2d 271) (1972) ("If you were asked right now to return a verdict without hearing any evidence from either side, what would your verdict be?"); *Mills v. State,* 137 Ga. App. 305 (2) (223 SE2d 498) (1976); *Montgomery v. State,* 128 Ga. App. 116 (1) (195 SE2d 784) (1973); the weight to be given the fact that the defendant has been charged or indicted, *Todd v. State,* 243 Ga. 539 (7) (255 SE2d 5) (1979); *Freeman v. State,* 132 Ga. App. 615 (208 SE2d 625) (1974); the state's burden of proof beyond a reasonable doubt, *Stack v. State,* 234 Ga. 19 (2) (214 SE2d 514) (1975); *Mills v. State,* supra; the jury's duty to acquit if the state fails to prove its case beyond a reasonable doubt, *Bethay v. State,* supra; *Hall v. State,* 135 Ga. App. 690 (4) (218 SE2d 687) (1975); *Stack v. State,* supra; the defendant's right not to testify, *Anderson v. State,* 161 Ga. App. 816 (289 SE2d 22) (1982); *Freeman v. State,* supra, 132 Ga. App. 615, and the credibility of law enforcement officers over ordinary citizens, *Bennett v. State,* 153 Ga. App. 21, 25-26 (264 SE2d 516) (1980); *Smith v. State,* 148 Ga. App. 1 (251 SE2d 13) (1978); *Cox v. State,* 248 Ga. 713 (3) (285 SE2d 687) (1982).[1]

Questions seeking to test the prospective jurors' willingness to accept defenses have been disallowed and upheld on appeal, *Holloway v. State,* 137 Ga. App. 124 (3) (222 SE2d 898) (1975) (use of a gun in self-defense); *Hart v. State,* 137 Ga. App. 644 (1) (224 SE2d

---

[1] In cases in which the death penalty is sought, questions concerning the jurors' convictions regarding capital punishment are required by Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). See *Bethay v. State,* supra at 377. Similarly, questions concerning possible racial bias and prejudice are authorized by Ham v. South Carolina, 409 U. S. 524 (93 SC 848, 35 LE2d 46) (1973). See *Reid v. State,* 129 Ga. App. 657, 658 (200 SE2d 454) (1973).

755) (1976) (defense of family member); *Freeman v. State,* supra, 132 Ga. App. at 616 (accidental discharge of a weapon); *Waters v. State,* 248 Ga. 355 (3) (283 SE2d 238) (1981) (insanity); *Jenkins v. State,* 157 Ga. App. 310 (3) (277 SE2d 304) (1981) (reliability of eyewitness identification).

Similarly, it has been held not to be error for the court to refuse to allow defense counsel to ask irrelevant questions, *Curtis v. State,* supra, 224 Ga. at (2) (whether the juror would favor legalized gambling, parimutuel betting and sale of whiskey); *Frazier v. State,* supra, 138 Ga. App. at 643 (the employment of the jurors' children, whether or not the jurors smoked or drank alcohol, and what newspapers and magazines they regularly read); *White v. State,* 230 Ga. 327, 336-337 (196 SE2d 849) (1973) (the jurors' ages); *Patrick v. State,* 245 Ga. 417 (3) (265 SE2d 553) (1980) (the thinking of other people as to the defendant's guilt).

By the same token, it has been held not to be error for the court to refuse to allow defense counsel to ask prospective jurors concerning their service as jurors in other cases, *McGinnis v. State,* 135 Ga. App. 843 (2) (219 SE2d 485) (1975); *Frazier v. State,* supra, 138 Ga. App. at (2).

On the other hand, it has been held to be error in a drug case to refuse to allow defense counsel to ask: "Have you or any member of your family ever been a victim of a drug transaction?" and "Has any member of your family ever had any problems with drugs?" *Craig v. State,* supra, 165 Ga. App. at 156.[2]

In *Falsetta v. State,* 158 Ga. App. 392 (1) (280 SE2d 411) (1981), the prospective jurors were asked whether they were or had ever been employed by any law enforcement agency and whether they had any close family members affiliated now or in the past with any law enforcement agency. The conviction was reversed when it was learned after trial that a former policeman, without responding to the first question asked, had served on the jury. In reversing, the court noted that the defendant was entitled to the information sought by the question. Although the issue in *Falsetta* involved the juror's employment by a law enforcement agency, as opposed to the juror's family, we find both questions to be proper to "illustrate any interest of the juror in the case, including . . . any fact or circumstance indicating any inclination, leaning or bias which the juror might have

---

[2] Of course, it is error to refuse to allow counsel to ask questions expressly authorized by the Code section (e.g., jurors' relationship or acquaintance with the district attorney: jurors' memberships in religious, social and fraternal organizations). *Cowan v. State,* 156 Ga. App. 650 (275 SE2d 665) (1980).

respecting the subject matter of the action. . . ." OCGA § 15-12-133 (Code Ann. § 59-705). Certainly, if a juror's religious, social and fraternal connections are relevant and permissible areas of inquiry, then the juror's relationship to employees engaged in law enforcement is also permissible.

Therefore, in the case before us it was error not to allow the defendant to pose this question to the jurors. We reach this conclusion in part because of the limitations, discussed above, upon asking questions concerning the law and its application to the case on trial.

We acknowledge that the question whether members of the jurors' immediate families had ever worked for law enforcement agencies is not related to the "specific" or "particular" suit being tried. Rather, it relates to the type or nature of the suit being tried, to wit: a criminal case. We find that *Hill v. State,* supra, 221 Ga. 65; *Curtis v. State,* supra, 224 Ga. 870; and *Frazier v. State,* supra, 138 Ga. App. 640, were correctly decided but that the phrases used in these decisions, "specific case" and "particular suit," impose an erroneous limitation on OCGA § 15-12-133 (Code Ann. § 59-705), supra.

2. The state contends, alternatively, that the defendant has failed to show that any jury members who decided the case had any relatives who were or had been law enforcement officers, and thus, the defendant has failed to meet the burden of showing harm. The state cites *Roach v. State,* 221 Ga. 783, 786 (147 SE2d 299) (1966).

In *Roach v. State,* supra, 221 Ga. at 786, the law enforcement officer in question did not testify and the court held that "The burden is on him who asserts error to show it affirmatively by the record." It is true that the burden is on the appellant to show, from the record, that error occurred. However, the decisions go both ways on who has the burden of showing that the error was harmful.[3]

In the area of voir dire examination of prospective jurors, the case of *Durham v. State,* 129 Ga. App. 5 (3) (198 SE2d 387) (1973), puts the burden of showing harm on the appellant,[4] while *Wallace v.*

---

[3] We deal here with an error under state law, as opposed to an error under the U. S. Constitution. Regarding constitutional errors, the burden of showing that the error was harmless, beyond a reasonable doubt, is upon the state. Chapman v. California, 386 U. S. 18, 24-26 (87 SC 824, 17 LE2d 705) (1967); *State v. Hightower,* 236 Ga. 58, 61 (222 SE2d 333) (1976).

[4] In other areas, the following cases put the burden of showing harm on the appellant: *Carpenter v. Forshee,* 103 Ga. App. 758, 771 (120 SE2d 786) (1961); *Continental Nut Co. v. Savannah Bank,* 142 Ga. App. 509, 513 (236 SE2d 501) (1977).

*State,* 164 Ga. App. 642 (298 SE2d 627) (1982), finds that after showing error, the appellant is under no burden to show prejudice.[5]

Some of the cases express the rule thusly: "It is no answer to the violation of the mandatory rule to say that the record does not show any harm to have resulted to the defendants because of this error, since it has been held in numerous cases that, whenever the rights of a party are withheld or violated, the presumption of law is that he has been injured unless the contrary plainly appears." *Poultryland, Inc. v. Anderson,* 200 Ga. 549, 562 (37 SE2d 785) (1946).

Applying *Poultryland,* supra, in another civil case, yet one related to voir dire, in *Hill v. Crowell,* 244 Ga. 294 (2) (260 SE2d 18) (1979), this court held: "Where a party in a civil case has been denied the right to an examination of jurors individually, the error is presumed to be harmful."

From the foregoing, we conclude that where a defendant in a criminal case has been deprived of his or her rights under OCGA § 15-12-133 (Code Ann. § 59-705) to examine prospective jurors on voir dire, the burden is on the state to show that the error was harmless. Accord, *Thomas v. State,* 247 Ga. 7 (273 SE2d 396) (1981); *Bradham v. State,* supra, 243 Ga. at (3).[6] This holding applies even though the defendant did not exhaust his or her peremptory strikes.

In an effort to show that the error was harmless, the state urges that the defendant was allowed to ask prospective jurors whether they were related to the district attorney or his staff or to prosecution witnesses. They were also asked whether they (personally) were or ever had been employed by law enforcement agencies. However, the Chief of Police of Arlington, the first officer to arrive on the scene, was the state's first witness, and an employee of the sheriff's department testified as to an incriminating statement given by the defendant. The defense was self-defense. The evidence showed that the defendant was stabbed before the shots were fired. The defendant remained at the scene of the shooting until the police arrived and he was not placed under arrest that night. We do not find that the state has shown that it is "highly probable" that the limitation on voir dire was harmless error. *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976).

3. There is no error, as contended by the defendant, in refusing

---

[5] The following cases find that the appellant is not under any burden to show harm: *Poultryland Inc. v. Anderson,* supra at 562; *Montos v. State,* 212 Ga. 764, 766 (95 SE2d 792) (1956).

[6] The burden the state must meet is the "highly probable" test set forth in *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976).

to charge in the exact language requested on the law as to circumstantial evidence because the jury was instructed as to the applicable principles of law.

*Judgment reversed. All the Justices concur, except Marshall, P. J., who dissents as to Division 2 and the judgment.*

DECIDED SEPTEMBER 8, 1983.

*Hodges & Erwin, Kenneth B. Hodges, Jr.,* for appellant.
*J. Brown Moseley, District Attorney, W. Paul Fryer, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.