S93A1473. JONES v. THE STATE.
(439 SE2d 645)

CLARKE, Chief Justice.

John William Jones was convicted of felony murder, cruelty to children, and aggravated battery in the death of his son, Jonathan

Jones, and was sentenced to life imprisonment.[1] He appeals and we affirm.

On November 2, 1988, John William Jones brought his three-month-old son into the Perry Hospital emergency room. Jones told the nurse that he had fed the baby some milk and then dropped the baby on the floor. The baby was not breathing and his skin had a bluish color. Dr. Larry Stewart, the child's pediatrician administered CPR and other emergency measures. He noted that there were several bruises on the child's buttocks, thighs, and back. There was also a relatively fresh bruise over the infant's left eye. These bruises were, according to Dr. Stewart, consistent with being beaten with a hand, belt, or cord of some kind. After stabilizing the child, Dr. Stewart examined the baby's eyes and noted multiple retinal hemorrhages. Another nurse on duty reported the case to the Department of Family & Children Services because she felt that the baby's injuries were inconsistent with appellant's explanation. Later that day, in an interview with a Child Protective Services investigator and a sergeant from the sheriff's department, appellant said that when he dropped the baby, he noticed that his son was not breathing. He then ran to his father's house, and his father took them to the hospital.

Doctors treated the child at the hospital before transporting him to the Medical Center of Central Georgia in Macon for specialized treatment. Dr. J. Gregory Jones, Chief of Ophthalmology at Mercer Medical School, examined the child and found massive hemorrhaging inside both of the victim's eyes. He noted such profound retinal detachment that he believed the child's injuries resulted from a tremendous amount of force consistent with "shaken baby syndrome."[2] Dr. Jones testified at trial that the degree of force necessary to cause such hemorrhaging would have to be "severe or violent." Dr. Stewart testified that before this incident, the baby was healthy with no signs of any underlying serious medical conditions. He also testified that the child had healthy eyes before the injuries on November 2, 1988.

Dr. Lowell Clark testified that the injuries suffered by the infant

---

[1] The crime was committed on November 2, 1988, and the victim died on September 29, 1991. Jones was indicted on January 21, 1992 in Houston County. The trial began on August 24, 1992, and the jury convicted Jones on August 26, 1992. On October 6, 1992, the trial court sentenced Jones to life imprisonment. Jones filed a motion for new trial on September 18, 1992, and filed the final amendment to his motion for new trial on April 7, 1993. The trial court denied the motion on May 19, 1993. The case was docketed in this court on July 6, 1993, and orally argued on September 21, 1993.

[2] Dr. Stewart testified that shaken baby syndrome was first described in pediatric literature about 1974. It involves shearing of blood vessels in the brain resulting from the acceleration and deceleration of an infant's head as it is shaken by the shoulders and arms. The head snaps back and forth, tearing small venules in the brain and retinal field of the eyes. Dr. Stewart also testified that he had never seen a situation in which an attempt to shake the breath back into a child resulted in injuries seen with shaken baby syndrome.

were consistent with child abuse, such as shaken baby syndrome or being thrown against a wall. He further testified that these injuries could be caused if the child were dropped; however, the fall would have to be from the third or fourth floor of a building.

The child remained at the hospital for seven weeks before returning home in a vegetative state. Thirty-five months later, on September 29, 1991, Jonathan Matthew Jones died. Upon the child's death, Dr. James Whitaker examined the body. He testified that the child's brain was about one-third to one-quarter the size of the brain of a normal person of that age. The child died as a result of cranial cerebral trauma and its complications.

Appellant testified at trial that he dropped the child on the floor. When he noticed that the infant was not breathing, he grabbed the child and shook him several times, hitting him on the back, trying to get the child to breathe. He then took the child to the hospital. In his testimony, Jones said that he did not know that he could hurt a baby by shaking it.

1. Considering the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found Jones guilty of these crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant alleges that his trial counsel's performance was so ineffective as to deny his constitutional right to an attorney. Appellant correctly states the standard for ineffective assistance claims. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U. S. 668, 686 (104 SC 2052, 80 LE2d 674) (1984). First, appellant must prove that trial counsel's performance was deficient. Second, he must show that but for trial counsel's deficiencies, there is a reasonable probability that the results of the trial would have been different.

Appellant catalogs a long list of complaints of his trial counsel's conduct. Although he retained trial counsel three years before he was indicted, his attorney did not interview the prosecution's witnesses, filed no pretrial motions, and spent little time with appellant discussing the case. Furthermore, appellant argues, during the trial, his attorney made no objections to the prosecution's case, improperly cross-examined prosecution witnesses, failed to call expert witnesses for his client's case, and failed to file the appropriate requests for jury instructions. Some of these trial decisions amount to strategic decisions of trial counsel. *Austin v. Carter*, 248 Ga. 775 (285 SE2d 542) (1982) (holding that decisions on which witnesses to call and how to conduct cross-examinations are the exclusive province of trial counsel after consultation with his client); *Johnson v. State*, 171 Ga. App. 851 (321

SE2d 402) (1984) (holding that a trial attorney is not incompetent simply because he failed to file pretrial motions, particularly where no necessity for or benefit from them is shown). Appellant also contends that his trial counsel was ineffective for failing to reserve objections to the jury charge. Failure to object to a court's charge, however, is not ineffective assistance where the appellant does not show how this prejudiced his case. *Kight v. State*, 181 Ga. App. 874 (354 SE2d 202) (1987).

Appellant further alleges that trial counsel was ineffective in failing to submit jury charges on the definition of "maliciously," an essential element in the crimes charged and on the mistake of fact defense. However, the term "maliciously," as used in the cruelty to children statute, under which the appellant was indicted, is of such obvious significance and common understanding that there is no need to define it in the jury charge. *Morris v. State*, 185 Ga. 67 (2) (194 SE 214) (1937); *Gaddis v. State*, 176 Ga. App. 526 (336 SE2d 587) (1985).[3] Appellant also argues on appeal that he did not know that shaking the infant would cause the type of injuries that eventually killed his son, and that this would give rise to a mistake of fact defense. The strategy of appellant at trial was to show that he did not intend to hurt the child when he shook him. The trial court charged the jury on accident or misfortune:

[N]o person shall be found guilty of any crime committed by misfortune or accident where there is no criminal scheme, undertaking or intention or crime [sic] negligence. An accident is an event which takes place without one's foresight or expectation, that which takes place or begins to exist without design.

If you find from the evidence in this case that the incident which is the subject matter of this case occurred as a result of misfortune or accident and not as a result of a criminal undertaking or criminal negligence then it would be your duty to acquit the defendant.

Under OCGA § 16-3-5, a person shall be found not guilty of a crime if the act was induced by a misapprehension of fact which, if true would have justified the act or omission. Appellant admits that he shook the baby; the issue for determination by the jury is whether he

---

[3] Under his third enumeration of error, appellant argues that the trial court erred in failing to give an instruction to the jury defining the term "maliciously" as used in OCGA § 16-5-70, the cruelty to children statute and OCGA § 16-5-24, aggravated battery. We find this claim to be without merit as explained above.

did so maliciously, i.e., with malice. Malice implies "the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the *wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result.*" *Gaddis*, supra at 526. Mistake of fact is a defense to a crime to the extent that the ignorance of some fact negates the existence of the mental state required to establish a material element of the crime. LaFave & Scott, Criminal Law, Vol. 1, p. 575, § 5.1. Mistake of fact would not negate the mental state required in cruelty to children, i.e., wanton and wilful doing of an act with an awareness of plain and strong likelihood that cruel or excessive physical or mental pain would result from the defendant's actions. A charge on accident or misfortune was an appropriate charge, not mistake of fact. Therefore, appellant's counsel was not ineffective for his failure to request a mistake of fact charge.[4]

The prosecution called several medical experts to testify about the violence of the shaking that caused the injuries to the infant. Appellant's defense was that he did not intend to harm the child. Therefore, much of the testimony and cross-examination now expected by Jones would have been fruitless. Given the evidence against him, appellant has not shown how he would have obtained a different result if trial counsel had acted differently.

3. Appellant also argues that the trial court erred in failing to give a limiting instruction on the purpose for which evidence offered by the state's witnesses on the two- to three-day-old bruises on the victim could be considered. Appellant contends on appeal that this evidence improperly impugned his character and that it amounted to evidence of prior misconduct.

None of the witnesses of the state indicated that appellant caused the bruises on the victim's buttocks and legs. In fact, the only evidence in the record, as appellant argues, is that the mother disciplined the child. Because appellant's defense was that he beat and shook the child to revive it, evidence that the bruises were old was relevant. Where evidence is otherwise relevant, it does not become inadmissible simply because it incidentally puts a defendant's character or reputation into evidence. *Earnest v. State*, 262 Ga. 494, 495 (422 SE2d 188) (1992).

4. During closing arguments, the prosecutor argued that because of the crying, the defendant "freaked out," "lost it," "went into a rage," and shook the child. Appellant argues that this raised the issue of voluntary manslaughter and that the trial court erred in failing to

---

[4] Under a separate enumeration of error, appellant contends that the trial court erred in failing to give a jury charge on the affirmative defense of mistake of fact. For the above reasons, we affirm the trial court's decision to charge the jury on accident or misfortune.

give an instruction on the lesser included offense. Trial counsel made no written request for a charge on voluntary manslaughter. The prosecutor's statements to the jury do not constitute evidence of passion to justify a charge on voluntary manslaughter.

5. In his final enumeration of error, appellant contends that the trial court erred in giving a sequential charge, eliminating from full consideration the option of involuntary manslaughter as prohibited under *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992). The trial court did not give a sequential charge. After setting forth the elements of felony murder, the trial judge instructed the jury:

> Now in your consideration of the indictment, that is, the charge of felony murder, you may also consider the lesser included offense of involuntary manslaughter in the commission of an unlawful act. . . .

This charge does not require the jury to rule out the felony murder before considering involuntary manslaughter. Furthermore, the *Edge* problem exists in a case where the jury charge prevents a jury from considering the issue of sufficient provocation that would reduce the homicide to voluntary manslaughter. The jury in this case had to decide whether the appellant killed a person, without any intention to do so, while in the commission of a misdemeanor. The trial judge committed no error in charging the jury on felony murder and involuntary manslaughter.

*Judgment affirmed. All the Justices concur, except Sears-Collins, J., who concurs in the judgment only.*

DECIDED JANUARY 31, 1994 —
RECONSIDERATION DENIED FEBRUARY 25, 1994.

*Henry G. Smith, Jr.*, for appellant.

*Edward D. Lukemire, District Attorney, Claire C. Chapman, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Staff Attorney*, for appellee.