## S00A0699. DRAKE v. THE STATE.
### (537 SE2d 336)

BENHAM, Chief Justice.

Appellant Richard Lamont Drake was convicted of malice murder in connection with the death of his five-week-old daughter.[1] He now brings this appeal in which he contends that the giving of portions of the trial court's jury instructions amounted to reversible error.

1. The associate medical examiner who performed the autopsy on the child testified that the cause of death was blunt force injury to the head, and that the child's internal injuries (subdural bleeding, optic nerves surrounded by hemorrhaging, hemorrhaging in the back of the neck, subarachnoid hemorrhaging with no evidence of an explanatory disease process) were consistent with shaken baby syndrome.[2] The expert opined that the child had died within a few hours of the infliction of the injuries since the injuries were severe and the body lacked an inflammatory response to those injuries. The child's mother testified that, on the day the child died, appellant had called her at her job at approximately 6:00 p.m. and asked her to come home. When she arrived home, appellant told her the baby was not breathing and had appeared to have suffered a seizure. Another inhabitant of the home testified that he had heard the baby crying at 2:30 p.m. the day she died. According to the victim's mother, as she and appellant walked with the child to a hospital, appellant told the

---

[1] The infant died on September 13, 1995, and appellant was arrested two days later in Charlotte, North Carolina. Appellant was charged with malice murder, felony murder, and cruelty to children in an indictment returned November 8, 1996. His trial began on April 28, 1997, and concluded the next day with the jury's return of guilty verdicts on all counts. The trial court sentenced appellant to life imprisonment for malice murder after concluding that the felony murder and cruelty to children guilty verdicts merged into the malice murder conviction. Appellant's motion for new trial, filed May 23, 1997, was denied September 8, 1999, and his notice of appeal was filed on October 4, 1999. The appeal was docketed in this Court on January 12, 2000, and orally argued on April 25, 2000.

[2] Shaken baby syndrome has been described as "the shearing of blood vessels in the brain resulting from the acceleration and deceleration of an infant's head as it is shaken by the shoulders and arms. The head snaps back and forth, tearing small venules in the brain and retinal field of the eyes." *Jones v. State,* 263 Ga. 835, 836 n. 2 (439 SE2d 645) (1994).

witness to tell medical and police personnel that she had been with the baby all day and that the child had asphyxiated on formula. When the autopsy belied that explanation, the child's mother, again at appellant's suggestion, told police she had accidentally hit the child's head on the wooden arm of a sofa. The child's mother was then arrested. The investigating detective testified that the child's mother told him two days after her arrest that appellant had told her he had hit the child on the head "a little bit too hard" when the infant had not stopped crying. The child's mother testified that appellant's threats concerning her family members had caused her to tell the two false stories to police. The evidence was sufficient to authorize appellant's conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Jones v. State*, 263 Ga. 835 (1) (439 SE2d 645) (1994).

2. At the State's request and over appellant's objection, the trial court instructed the jury on the law of voluntary manslaughter. After giving the pattern charge which defines the crime,[3] the trial court informed the jury that

> passion on the part of the slayer is an essential element of voluntary manslaughter and *unless it be shown that the person killing was so overcome by passion as to exclude all idea of deliberation or malice*, a killing is not voluntary manslaughter. Merely that a killing is done in passion is not sufficient to make the offense voluntary manslaughter. The existence of the passion must be justified. [(Emphasis supplied.)][4]

On appeal, appellant contends that this charge constitutes reversible error because the italicized language impermissibly shifted the burden of proof to him. A jury instruction "which place[s] any burden of persuasion upon the defendant in criminal cases shall not be given, and such charges will be deemed erroneous and [the conviction] subject to reversal, absent harmless (or) invited error." *Bridges v. State*, 268 Ga. 700 (2) (b) (492 SE2d 877) (1997).

The same charge survived an attack that it improperly shifted

---

[3] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Part 4 (B) (5) (2d ed.).

[4] The charge at issue contains the contents of two requests to charge submitted by the State. The first sentence of the charge is taken from *Rentfrow v. State*, 123 Ga. 539 (51 SE 596) (1905), and the second and third sentences are from *Allen v. State*, 187 Ga. 178 (4) (200 SE 109) (1938). Both cases pre-date by over 50 years our current statutory definition of voluntary manslaughter. The better practice is to base requests to charge on the pattern jury instructions compiled by the Council of Superior Court Judges or on case law construing or applying the current version of a statute or legal principle. See *Coleman v. State*, 271 Ga. 800 (8) (523 SE2d 852) (1999).

the burden of proof to the defendant in *Hambrick v. State*, 256 Ga. 688 (3) (353 SE2d 177) (1987). There, we determined there was no error because the trial court had told the jury throughout the charge that "the burden of proof always rests on the State." Id. at 690. An examination of the *Hambrick* trial transcript and the trial transcript in the case at bar shows that each jury was told that the burden was on the State to prove beyond a reasonable doubt each element of the crimes charged in the indictment and every element of the offenses charged; that the defendant bore no burden of proof whatsoever; and that the burden of proof never shifted to the defendant to prove his innocence. Accordingly, we disagree with appellant's assertion that the contested charge shifted the burden of proof to him.

3. Appellant next contends that the trial court gave an improper sequential charge when it told the jury that it was to consider the possibility of voluntary manslaughter only after the jury had ruled out malice murder and felony murder. See *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992). In *Edge* at 867, we found error in the giving of such a charge. In the case at bar, the trial court recognized its mistake within 30 minutes and gave a curative instruction in which it told the jury to consider malice murder, felony murder, and voluntary manslaughter at one time, and emphasized that the jury's consideration of voluntary manslaughter was not to be preceded by a finding that appellant was not guilty of malice murder and felony murder.

The giving of an erroneous jury instruction must be harmful to warrant reversal of a judgment of conviction, and in determining harm we examine the charge as a whole. *Foote v. State*, 265 Ga. 58 (2) (455 SE2d 579) (1995). In the recharge, the trial court corrected its misstatement and apprised the jury of the procedure to be followed when considering the malice murder, felony murder, and voluntary manslaughter charges. Accordingly, the trial court's original sequential charge does not constitute reversible error. Id.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 2, 2000.

*Penny D. Furr*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, George W. K. Snyder, Jr., Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.