S03A0007. NAPIER v. THE STATE.
S03A0009. HALLEY v. THE STATE.
(583 SE2d 825)

SEARS, Presiding Justice.

Appellants Jack Wayne Napier and James Neal Halley appeal their convictions for murder, concealing the death of another and auto theft.[1] Among other things, appellants urge the trial court erred by forbidding voir dire questioning regarding appellants' status as prison escapees and in charging the jury on certain statutory presumptions regarding venue. Because the issue of appellants' escape from prison was relevant to the subject matter of the State's prosecution, the trial court abused its discretion by prohibiting them from raising that issue during voir dire. Having reviewed the transcript, however, we conclude it is highly improbable that this error contributed to the jury's verdicts. Therefore, it was harmless. Regarding the trial court's jury charge on venue, we conclude it was not improperly burden-shifting. Nonetheless, for reasons explained below, we believe trial courts would do well to refrain from quoting certain portions of OCGA § 17-2-2 when charging juries on venue, and we set forth preferred alternative charges herein. Finding no merit to appellants' other contentions, we affirm.

The record shows that in June 2000, appellants escaped from a Kentucky prison. Several weeks later, they were at a highway rest stop in Virginia when they met the victim, Tommy Chittum, and his girlfriend, Cynthia Duncan. The foursome spent several days

---

[1] The crimes were committed on July 21, 2000, and appellants were jointly indicted on January 10, 2001, for malice murder, concealing the death of another and auto theft. A joint trial was held January 29, 2001-February 1, 2001. Appellants were found guilty of all counts and received sentences of life in prison along with two consecutive ten-year terms. Appellant Napier filed a new trial motion on February 22, 2001, which was amended on October 2, 2001, April 8, 2002, and April 9, 2002. Appellant Halley filed a new trial motion on February 16, 2001, which was amended on October 2, 2001, April 2, 2002, and April 9, 2002. Following a hearing, the trial court denied the new trial motions on July 1, 2002, and July 11, 2002, respectively. Appellants both filed notices of appeal on July 29, 2002. The appeals were docketed with this Court on August 3, 2002, and argued orally on February 11, 2003.

together in Virginia, shoplifting, doing drugs, and drinking alcohol. Appellants and Chittum then left Virginia in Chittum's van for a trip to Florida. Stopping in Fayetteville, North Carolina, around mid-day, the victim telephoned his landlord in Virginia. That evening, Chittum stopped by the roadside near Savannah to use the bathroom, and was strangled by appellant Napier. Appellants then loaded Chittum's body into the van and drove to a convenience store in Chatham County, where an off-duty police officer observed them unload the victim's body and carry it into the woods. An autopsy later revealed ligature marks on the front of the victim's neck that were consistent in size and shape with a shoelace that was found in the van. Police also discovered the victim's Harley-Davidson motorcycle in the van.

After appellants' arrests, appellant Napier told a cellmate, Norman, the details about the crime, and explained that when the victim made the phone call in Fayetteville, appellants feared he had decided to return to Virginia and would leave appellants abandoned by the roadside. Napier told Norman that he had strangled the victim with a shoelace. Napier also told Norman that before he strangled the victim, he had seen a sign that read "Welcome to Savannah."

1. The evidence of record, construed most favorably to the jury's verdicts, was sufficient to enable a rational trier of fact to find appellants guilty beyond a reasonable doubt of the crimes for which they were convicted.[2]

2. Our Georgia Constitution requires that venue in all criminal cases must be laid in the county in which the crime was committed.[3] Although they concede the trial court properly charged the jury that the State carries the burden of proving the material allegation of venue beyond a reasonable doubt,[4] appellants contend the trial court gave additional instructions regarding venue that improperly imposed a burden on appellants to disprove that venue was properly laid.

At trial, as explained above, the State submitted evidence that the victim was killed after appellants had entered the city limits of Savannah. Appellant Napier, however, testified that the victim was killed by a third party and was already dead when appellants entered Georgia. Thus, there was conflicting evidence on the question of where the murder was committed. After charging that venue is a jurisdictional prerequisite and must be proven by the State beyond a reasonable doubt as to each crime alleged, the trial court charged the jury that:

---

[2] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] Ga. Const. (1983), Art. VI, Sec. II, Par. VI; OCGA § 17-2-2.

[4] See *Jones v. State,* 272 Ga. 900, 902 (537 SE2d 80) (2000).

A homicide shall be considered as having been committed in the county in which the cause of death was inflicted. If it cannot be determined in which county the cause of death was inflicted, it shall be considered that it was inflicted in the county in which the death occurred.[5]

If a dead body is discovered in this state and it cannot be readily determined in which county the cause of death was inflicted, it shall be considered that the . . . cause of death was inflicted in the county in which the dead body was discovered.[6]

If, in any case, it cannot be determined in which county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed.[7]

As admitted by appellants, these charges were taken verbatim from OCGA § 17-2-2 (c) and (h).

In criminal prosecutions, due process of law prohibits jury charges that could be interpreted by reasonable jurors as creating either: (1) a conclusive presumption regarding an essential element or a material allegation of the State's case, or (2) a presumption that shifts the burden of persuasion on an essential element or material allegation to the defendant.[8] Appellants argue the trial court's jury charges regarding venue suffer from the latter infirmity.

We disagree with appellants' contention, although we concede the trial court's charges on venue were taken from poorly drafted legislation. Rather than creating burden-shifting presumptions regarding venue, Code section 17-2-2 was intended by the legislature to provide means by which a jury can ensure that the constitutional mandate of establishing venue beyond a reasonable doubt has been satisfied in cases such as this one, where the State has brought forth evidence to establish venue and the defendant has introduced evidence intended to counter that showing.[9] We note that OCGA § 17-2-2 (c) and (h) instruct juries to "consider" — rather than "presume" — whether, in certain factual scenarios, venue has been properly laid. In normal usage, "consider" means to contemplate, think about, or

---

[5] OCGA § 17-2-2 (c).
[6] Id.
[7] OCGA § 17-2-2 (h).
[8] *Sandstrom v. Montana*, 442 U. S. 510, 517-519 (99 SC 2450, 61 LE2d 39) (1979).
[9] See *Cook v. State*, 273 Ga. 828, 830 (546 SE2d 487) (2001); *Felker v. State*, 252 Ga. 351, 367-368 (314 SE2d 621) (1984).

reflect upon,[10] and thus we do not believe the statute requires any compulsory or permissive presumptions to be drawn regarding whether venue in a particular forum is proper.[11]

Nonetheless, in order to more clearly effectuate the intention of OCGA § 17-2-2, and to alleviate the type of concerns raised by appellants, we will take this opportunity to instruct that in future cases, the better practice will be for trial courts, when charging juries, to refrain from quoting OCGA § 17-2-2 (c) and (h) verbatim. Instead, trial courts should instruct as follows:

> A homicide shall be considered as having been committed in the county in which the cause of death was inflicted. If it cannot be determined in which county the cause of death was inflicted, **the jury may consider whether** it was inflicted in the county in which the death occurred.

> If a dead body is discovered in this state and it cannot be readily determined in which county the cause of death was inflicted, **the jury may consider whether** the cause of death was inflicted in the county in which the dead body was discovered.

> If, in any case, it cannot be determined in which county a crime was committed, **the jury may consider whether it was** committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed.

As for this particular case, we are satisfied that the trial court's charge did not raise any improper burden-shifting presumptions regarding venue. Whenever this Court considers a claim of an erroneous jury instruction, we evaluate the jury charge as a whole.[12] In this case, in addition to the charge quoted above, the trial court instructed that venue is a jurisdictional fact that must be proved beyond a reasonable doubt as to each crime charged, and even went so far as to instruct the jury to determine whether venue was properly laid before considering the criminal charges set forth in the indictment. The trial court also charged that the presumption of innocence remained with appellants throughout trial; that the burden of proof rested upon the State to prove every material allegation and essential element of its case beyond a reasonable doubt; that no

---

[10] Webster's Ninth New Collegiate Dictionary, pp. 279-280 (1988).

[11] Compare *Sandstrom*, 442 U. S. at 517 (instructing a jury to "presume" intent based upon defendant's actions wrongly authorized jurors "to suppose" intent was established "without any proof").

[12] *Drake v. State*, 272 Ga. 797, 799 (537 SE2d 336) (2000).

burden of proof is ever placed upon or shifted to the appellants; and that all jury instructions should be considered collectively as a "package." Accordingly, we reject appellants' claim that the trial court's jury charge was burden-shifting with regard to venue.

Finally, we conclude that the State established venue beyond a reasonable doubt in this case. Napier stated to his cellmate that he had committed the murder after having entered the Savannah city limits. Appellants were seen unloading the victim's dead body from their van while in Chatham County. After appellants drove away from the scene, observers ran to the body and discovered it was still warm and showed no signs of decay, indicating that death had only recently occurred. Before unloading the body from the van, appellants were stopped in Chatham County by an off-duty policeman who, despite speaking with appellants through an open van window while the body remained unseen inside, reported that he noticed no foul smell or odor, also indicating a recent death. While appellant Napier claimed the victim was killed outside Chatham County, the weight and credibility to be given that testimony were solely within the jury's province, and the jurors were free to reject or accept any portion of it.[13] Accordingly, based upon the evidence of record, we believe reasonable jurors could conclude beyond a reasonable doubt that venue was properly laid in Chatham County.[14]

3. The trial court did not err in denying appellants' motions in limine to exclude evidence of their status as prison escapees. Such evidence was relevant to the State's theory that as escapees, appellants were attempting to elude capture, believed they would be abandoned by the victim with no money or means of transportation, and killed the victim in order to obtain his van and motorcycle, both of which could be sold or used for transportation. Accordingly, evidence of appellants' prison escape was relevant to show motive[15] and such evidence was not rendered inadmissible by the fact that it may have incidentally placed appellants' characters at issue.[16]

4. The trial court abused its discretion by prohibiting appellants from questioning prospective jurors about prison escapes and escapees during voir dire. During voir dire:

> counsel for either party shall have the right to inquire of the individual jurors examined touching any matter or thing which would illustrate any interest of the juror in the case,

---

[13] *Cook*, 273 Ga. at 830.

[14] See *Jackson*, 443 U. S. 307.

[15] *Ware v. State*, 273 Ga. 16, 17 (537 SE2d 657) (2000); *Collins v. State*, 273 Ga. 30, 31 (538 SE2d 34) (2000).

[16] *Ware*, 273 Ga. at 17.

including any opinion as to which party ought to prevail, [and] any fact or circumstance indicating any inclination, leaning, or bias which the juror might have respecting the subject matter of the action . . . or parties thereto.[17]

While not without limitation,[18] this broad right expressly permits questioning aimed at determining whether a prospective juror might be biased, or inclined one way or the other, with regard to a defendant in a criminal action. Accordingly, the trial court should have permitted appellants to ask questions during voir dire designed to ascertain whether any prospective juror would harbor bias against appellants because they were prison escapees.

Errors in which a defendant in a criminal case has been denied his statutory right to examine prospective jurors during voir dire are subject to harmless error analysis.[19] In light of the overwhelming evidence of appellants' guilt discussed above, we conclude it is highly improbable that the trial court's error in preventing voir dire questioning about prison escapes and escapees had any impact upon the guilty verdicts in this case. Therefore, the error was harmless.

5. At trial, witness Norman (appellant Napier's cellmate) testified that the State had made no offers or promises in exchange for his testimony and that the prosecutor offered only to tell the judge that Norman had cooperated with the State in appellants' joint trial. At his subsequent plea hearing, though, Norman told the presiding judge that the prosecutor had promised to release him after appellants' trial. That claim so contradicted the prosecutor's recommendation in the negotiated plea that the presiding judge initially rejected the plea and informed Norman that he would proceed to trial. At that point, Norman stated he wished to accept the negotiated plea, and dropped his claim that the prosecutor had told him he would be released.

Contrary to appellants' contention, these facts do not establish that the State failed to disclose a pre-trial agreement with Norman in violation of the rule set forth in *Giglio v. United States*[20] that due process requires the State to reveal any agreement, even an informal one, with a witness in a criminal prosecution concerning criminal charges pending against that witness. To the contrary, these facts show only that after appellants' trial was concluded, the State made a plea agreement with Norman, which does not, standing alone,

---

[17] OCGA § 15-12-133.
[18] See *Henderson v. State*, 251 Ga. 398, 400-401 (306 SE2d 645) (1983).
[19] *Henderson*, 251 Ga. at 403.
[20] 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972).

establish a violation under *Giglio*.[21]

6. Before appellants' trial, Norman sent a written request to the prosecutor asking that his bond be dropped and his parole for an earlier conviction be lifted in exchange for his testimony against appellants. The prosecutor did not respond to Norman's request. At trial, appellant Napier sought to cross-examine Norman regarding his requests, thereby attempting to impeach Norman's direct testimony that he had no expectation of a benefit from the State in exchange for his testimony. The trial court properly ruled that because Napier was attempting to impeach Norman with evidence that showed he had been previously paroled following conviction for a crime of moral turpitude, Napier was required to introduce a certified copy of Norman's conviction into evidence.[22]

7. The trial court did not err by failing to grant a mistrial or to give curative instructions sua sponte after sustaining appellant Napier's objection to speculative testimony from a police officer.[23]

8. Finally, we conclude that appellants did not receive ineffective assistance from trial counsel. As we have stated repeatedly, to prove a claim of ineffective assistance, an appellant must show both that counsel's performance fell below a reasonable standard of conduct and that, but for counsel's deficient performance, there is a reasonable probability the outcome of the trial would have been different.[24]

Appellants' lawyers were not ineffective for failing to object to the trial court's preliminary charge to the venire before voir dire that if, after considering the evidence, jurors did not have a reasonable doubt as to appellants' guilt, they "should convict." While we have discouraged the use of this language,[25] we have not held it to be error and hence will not fault counsels' failure to object to it at trial. Moreover, we note that when charging the jury before it began deliberations, the trial court properly instructed that in the absence of reasonable doubt, the jury would be *authorized* to convict."

Appellant Halley's trial counsel was not deficient for failing to request funds with which to hire a forensic pathologist to determine the time of the victim's death. While appellant argues this information was crucial to his claim that the murder occurred outside Geor-

---

[21] *McWhorter v. State*, 271 Ga. 461, 462 (519 SE2d 903) (1999); *McLemore v. State*, 255 Ga. 107, 108 (335 SE2d 558) (1985).

[22] See *Harwell v. State*, 270 Ga. 765, 768 (512 SE2d 892) (1999).

[23] *Mullins v. State*, 269 Ga. 157, 159 (496 SE2d 252) (1998). Nor did the trial court abuse its discretion in denying appellant Napier's mistrial motion after sustaining his objection to questioning by the prosecutor regarding the third party Napier claimed killed the victim and admonishing the prosecutor to refrain from asking any questions that might touch upon Napier's right to remain silent at the time of arrest or require Napier to produce evidence. See *Ottis v. State*, 271 Ga. 200, 201 (517 SE2d 525) (1999).

[24] *Milner v. State*, 271 Ga. 578, 579 (522 SE2d 654) (1999).

[25] *McPherson v. State*, 274 Ga. 444, 452 (553 SE2d 569) (2001).

gia, trial counsel elicited testimony from the state medical examiner that it was possible the victim died shortly after placing his phone call from Fayetteville, North Carolina. Thus, appellant was able to make his desired showing without hiring an independent forensic expert.[26] Halley's counsel's decision not to move for a severance was based primarily upon Halley's insistence that he and Napier be tried together, despite knowing that Napier's jailhouse confession to witness Norman would be introduced into evidence.[27] Moreover, when Napier and Norman took the stand and were available for cross-examination by Halley, any potential violation under *Bruton v. United States*[28] was prevented.[29]

Appellant Napier's counsel was not deficient for filing a speedy trial demand and for failing to seek a severance, both at Napier's insistence. The decision to file a speedy trial demand is usually tactical in nature, and with regard to trial strategy, effectiveness should not be evaluated in hindsight.[30] Moreover, contrary to Napier's claim, the record reflects that counsel was prepared for trial and the mere fact that counsel moved unsuccessfully on the first day of trial for funds with which to hire a forensic pathologist and for a continuance to permit forensic examination of the victim's body does not show otherwise. As for counsel's decision not to seek a severance, Napier has shown no prejudice as a result.

We have considered appellants' other claims of alleged ineffectiveness, and conclude they are without merit.[31]

*Judgments affirmed. All the Justices concur, except Hunstein, J., who concurs specially and in judgment only as to Division 4, and Carley, J., who concurs specially.*

CARLEY, Justice, concurring specially.

The issue in these cases is whether it is permissible for a trial

---

[26] Appellant Napier's motion for funds with which to hire a forensic pathologist was denied.

[27] Norman's testimony never made direct reference to Halley. Rather, Norman's testimony indicated that when Napier told him about the crimes, he had used the plural "we" rather than the singular "I."

[28] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

[29] *Bruton*, 391 U. S. at 136.

[30] *Slade v. State*, 270 Ga. 305, 307 (509 SE2d 618) (1998).

[31] These include appellants' allegations that their counsel was ineffective for failing to move for a mistrial after their objections to extraneous, improper and speculative testimony were sustained; failing to move for a mistrial when, during closing arguments, the prosecutor urged the jury to believe witness Norman's testimony; failing to introduce a certified copy of Norman's conviction into evidence, thereby preserving the right to conclude closing arguments; and mentioning appellants' claim of improper venue during opening statements by telling the jury that on the same day he was alleged by the State to have died in Georgia, the victim made a phone call from North Carolina to his landlord and expressed an intention to return home to Virginia.

court to use the actual language of OCGA § 17-2-2 (c) and (h) when instructing the jury on venue in a criminal homicide trial. I agree that such a charge does not unconstitutionally shift the burden of persuasion to the defense. However, I disagree with the majority's characterization of the statute as poorly drafted and I cannot concur in what is, in effect, a judicial rewriting of the law. In my opinion, the language of OCGA § 17-2-2 (c) and (h) is unambiguous, and should be followed and applied literally by the courts of this state.

"[A]ll criminal cases shall be tried in the county where the crime was committed. . . ." Art. VI, Sec. II, Par. VI of the Ga. Const. of 1983. OCGA § 17-2-2 "does not violate the mandate of [this constitutional provision]. It merely provides a mechanism by which that mandate can be carried out when the place in which the crime is committed cannot be determined with certainty." *Bundren v. State*, 247 Ga. 180, 181 (1) (274 SE2d 455) (1981). The statute is not unconstitutionally vague or indefinite. *Felker v. State*, 252 Ga. 351, 367 (2) (b) (314 SE2d 621) (1984). The statute does not create any presumptions whatsoever. The General Assembly's use of the mandatory phrase "shall be considered" simply establishes, as a matter of law, the county wherein the crime was committed under certain circumstances. Thus, if it cannot be determined in which of several counties the crime was committed, venue *is* proper in any one of them in which the evidence shows beyond a reasonable doubt that it might have been committed. OCGA § 17-2-2 (h). With specific regard to homicide, venue is in the county where the cause of death was inflicted. OCGA § 17-2-2 (c). If that county cannot be determined, venue is proper in the county where the death occurred or where the dead body was discovered. OCGA § 17-2-2 (c).

According to the majority's rephrasing of the statutory language, a jury "may consider whether" the crime was committed in one of the specified counties. However, the fact-finder has no discretion with regard to the matter of venue. Venue in a criminal case is controlled by our constitution and by the implementing provisions of OCGA § 17-2-2. As with the other elements of the State's case, the jurors must determine, beyond a reasonable doubt, the existence of venue based upon the evidence admitted at trial. If the evidence does not establish in which of several counties the crime was committed, then venue is proper in any county wherein the evidence does show beyond a reasonable doubt that it might have been perpetrated. If the evidence in a homicide case does not establish the county in which the cause of death was inflicted, then venue is properly laid in the county where the death occurred or where the dead body was discovered. If the evidence fails to show beyond a reasonable doubt that venue, as thus defined, is proper in the county where the trial is held, then the jury must return a verdict of not guilty. See *Schiefelbein v.*

*State*, 258 Ga. 623 (373 SE2d 354) (1988); *Felker v. State*, supra at 368 (2) (c).

Here, the State alleged that the murder occurred in Chatham County. Venue would be in that county under either OCGA § 17-2-2 (c) or (h). *Felker v. State*, supra at 367 (2) (b). The trial court correctly charged on those statutory provisions, and instructed the jury on the State's burden to show venue beyond a reasonable doubt. *Felker v. State*, supra at 367 (2) (c). Under the majority's suggested instruction, the jury would have been authorized to "consider" in which county venue was proper, rather than required to determine whether Chatham County was the proper venue under OCGA § 17-2-2 (c) or (h). The courts cannot rewrite legislation, and certainly should not do so in such a way as to create an impermissible and misleading impression that venue is a matter which is addressed to the jury's wide-ranging discretion. The charge given by the trial court in this case tracked the language of the venue statute approved by the General Assembly, and the instruction was correct in all respects. For that reason, I concur in the affirmance of the judgments.

I am authorized to state that Justice Hunstein joins in this special concurrence.

DECIDED JUNE 2, 2003 —
RECONSIDERATION DENIED JULY 11, 2003.

*Jackson & Schiavone, George T. Jackson, Steven L. Sparger*, for appellants.

*Spencer Lawton, Jr., District Attorney, Benjamin B. Reed, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.