A04A0862. MEEKS v. THE STATE.
(605 SE2d 428)

BARNES, Judge.

A jury found David Meeks guilty of two counts of aggravated sodomy, two counts of aggravated child molestation, child molestation, and aggravated sexual battery. Meeks appeals, contending that the trial court erred during counsel's examination of prospective jurors. For the reasons that follow, we affirm.

1. Meeks contends the trial court abused its discretion by restricting the questions he could ask prospective jurors. "The conduct of voir dire is within the discretion of the trial court, and his rulings

are proper absent some manifest abuse of his discretion. [Cit.]" *Gatlin v. State*, 236 Ga. 707-708 (2) (225 SE2d 224) (1976). OCGA § 15-12-133 delineates the proper scope of questions during jury selection and provides:

> [C]ounsel for either party shall have the right to inquire of the individual jurors examined touching any matter or thing which would illustrate any interest of the juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the juror might have respecting the subject matter of the action or the counsel or parties thereto, and the religious, social, and fraternal connections of the juror.

The record shows that at the start of voir dire, the prospective jurors were told that Meeks was charged with child molestation, sodomy, and sexual battery. The trial court asked the jurors as a whole the following questions, to which no juror answered in the affirmative:

> Has anybody who's been called here as a juror for any reason formed or expressed any opinion about this case?
>
> Have you any prejudice or bias resting on your mind either for or against the Defendant?
>
> Are your minds perfectly impartial between the State and the Defendant? If they're not, let me know now.

Counsel and the trial court then agreed that the trial court would ask the following question of potential jurors during individual sequestered questioning: "Have you, any member of your family, or a close friend ever been involved in a child molestation case?" The trial court then explained that if a juror answered "yes," it would ask if it would prevent the juror from being fair and impartial. If a juror responded "yes," to this question, the trial court explained that it would excuse the juror and that if the juror answered "no," it would allow defense counsel to ask follow-up questions.

The following then transpired when the first potential juror was questioned individually:

> THE COURT: Have you, any member of your family, or a close friend ever been involved in a child molestation case?

[JUROR]: No, sir.

THE COURT: Okay. Now he's qualified along that line, so the State can use you. . . .

[DEFENSE COUNSEL]: [Juror], do you have any strong feelings about a child molestation/sexual abuse case that would make it difficult for you to judge a case like this?

[JUROR]: Yes.

[DEFENSE COUNSEL]: Okay. Are they such that —

[PROSECUTOR]: I would object because that question had already been asked and answered by the Court when he asked this general question as to whether or not anyone had formed or expressed an opinion about the case as to the guilt or innocence of the accused.

THE COURT: I agree with you, but I want to ask this question. Do you think you could sit and listen to the evidence and make your mind based solely upon the evidence in this case?

[JUROR]: Possibly. That would be hard for me to do.

THE COURT: Well, see —

[JUROR]: I guess being a tender-hearted person and really the way I feel about kids and for someone to —

THE COURT: Well, wait.

[JUROR]: Okay.

THE COURT: Before you get into that, I've got to phrase it into questions that actually say this.

[JUROR]: All right.

THE COURT: Do you understand that everyone is innocent until proven guilty?

[JUROR]: Yes, sir. Yes, sir.

[THE COURT]: So if you look at that this this [sic] gentleman is innocent until the State carried its burden of proof, would you be able to sit and listen to the evidence and make up your mind based solely upon the evidence presented in the courtroom?

[JUROR]: Yes, sir.

THE COURT: Okay, any other questions?

. . .

[DEFENSE COUNSEL]: Have you had experience, life experience, in dealing with children?

[JUROR]: Both my boys were home taught. One is being home taught now.

THE COURT: That doesn't have anything to do with it.

[JUROR]: That wouldn't have anything? Okay.

[DEFENSE COUNSEL]: Now, the Judge asked you — understand your feelings about this —

THE COURT: I've already asked him that, [defense counsel]. Don't repeat this, now.

[DEFENSE COUNSEL]: I understand. I have no further questions.

Before the next potential juror was questioned, the trial court and counsel had the following discussion about the trial court's limitation on the scope of voir dire:

THE COURT: We've got to get this nailed down. There's not a civilized person in the world — and you may put that on the record — that I can conceive of that would not have strong feelings about child molestation.

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: These folks have already said they could be fair and impartial. So I don't want any strong feelings questions. If they don't have any involvement with a friend, a member of the family, or themselves with child molestation, I don't want to start bleeding their emotions with questions that tend to bring in their feelings that are not yet in the case because it's just going to boil down to exactly what I said. He's innocent until proven guilty. You saw how quickly he caught onto that and, of course, everybody feels strongly about child molestation, I do and I'm sure everybody else does, but we want to see the evidence first.

[DEFENSE COUNSEL]: I understand, Judge, but I think it's a fair question. We're trying to look at people and how their reactions are going to be and I think it's a fair question for us to ask. "Do you have such strong feelings about this that it's going to impair your judgment?"

THE COURT: No, sir, it is not. . . . If you couch in terms — I don't know how you would couch it. It's such strong feelings. You're actually putting the onus on somebody to have — that sort of is — it would be unusual if they didn't have some strong feelings about this. . . . I mean who could sit there and say, "No, I don't have any strong feelings about child molestation. It's just a casual thing."

[DEFENSE COUNSEL]: It just — I believe it would be appropriate to ask that question and then follow up with, "Is there any basis for that?" Your question is a very general question that, you know, is going to be difficult. We need some kind of basis for ferreting this out.

THE COURT: No, sir. I'm ferreting it out right now because they've already answered the question. "Do you have any bias or prejudice resting on your mind either for or against

the Defendant?" and it goes into detail. Those folks know what that means. Now, if they do have something to offer, they'll offer it to us if there's family, friends, or whatever.
[DEFENSE COUNSEL]: Yes, sir, but I just want to object for abridging our right and also for the rehabilitation of the witness I think it's inappropriate under the new case law for the Judge to sua sponte [rehabilitate] a witness.

In *Craig v. State*, 165 Ga. App. 156 (299 SE2d 745) (1983), we addressed whether a trial court abused its discretion by denying defense counsel the right to ask prospective jurors about their experience with drugs in a trafficking case. We analyzed the questions in light of OCGA § 15-12-133 and found that

[t]he questions were clearly "touching any matter or thing which would illustrate any interest of the juror in the cause," and were specifically questions concerning a "fact or circumstance [which would indicate] any inclination, leaning or bias which the juror might have respecting the subject matter of the suit." [OCGA § 15-12-133.]

Id. As in this case, the State argued that

appellant's questions were unnecessary because the state had previously asked two general questions as to whether any of the prospective jurors had any strong feelings about the use of drugs or exposure to the drug world which would prevent them from sitting as fair and impartial jurors.

Id. We rejected this argument, finding that

a question seeking to elicit, from an individual juror on his voir dire, specific facts or circumstances which are clearly within the purview of [OCGA § 15-12-133] should not be proscribed merely because more general questions dealing with the same subject matter have been previously addressed to the entire panel of prospective jurors. The statute provides that "counsel for *either* party" shall have the right to question prospective jurors.

(Emphasis in original.) Id.
We find that Meeks' counsel was entitled to ask prospective jurors whether they had such strong feelings about child molestation that it would impair their judgment or make it difficult for them to judge the case, and that the trial court abused its discretion by

prohibiting counsel from doing so. As in *Craig*, this question concerned a "fact or circumstance [which would indicate] any inclination, leaning, or bias which the juror might have respecting the subject matter of the [suit]." OCGA § 15-12-133. Indeed, it is very similar to the general question that was allowed by the trial court in *Craig*. As our Supreme Court admonished in *Henderson v. State*, 251 Ga. 398, 399-400 (1) (306 SE2d 645) (1983): "It should be kept in mind that the larger purpose of [OCGA § 15-12-133] is to enable counsel to identify those prospective jurors counsel desires to remove from the panel by use of peremptory strikes as opposed to challenges for cause."

As the trial court abused its discretion by refusing to allow Meeks' counsel to question prospective jurors about any strong feelings they might have had about child molestation, we must now evaluate whether Meeks was harmed by this error. The burden is on the State to prove that it is highly probable that the error did not contribute to the judgment. *Henderson*, supra, 251 Ga. at 403, n. 6; *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

In this case, we find that the trial court's error was harmless in light of the overwhelming evidence of Meeks' guilt. During sentencing, the trial court characterized the evidence against Meeks as follows:

> I think I can honestly say to the Defendant that in my going on 15 years on the Superior Court bench this is the worst case scenario of child molestation I've presided over. I think it is also a case that had the most conclusive proof of child molestation — or actually aggravated sodomy or aggravated child molestation. I cannot imagine this occurring, but there's simply so much evidence and so much conclusive evidence that I'm convinced that it occurred exactly as the State presented it.

The evidence against Meeks included his daughter's testimony that he forced her to perform oral sex on him over a period of years and that on the last occasion she spit the semen from her mouth into a box so that she could prove that she had been molested. Testing of the semen in the box revealed that it matched Meeks' DNA and that it was mixed with saliva that had a high probability of coming from his daughter. Additionally, a neighbor testified that he told the victim to collect the semen for evidence and that he had once walked in on Meeks and the victim in a compromising position. Finally, Meeks did not turn himself in as promised, but instead attempted to elude authorities until he was apprehended in Tennessee.

2. In his remaining enumeration of error, Meeks contends the trial court erred in its rehabilitation of the first juror who agreed that

he had strong feelings about child molestation. Meeks did not, however, request that this juror be struck for cause. As a result, he waived this enumeration of error and we cannot consider it on appeal. *Ashford v. State*, 271 Ga. 148, 149 (2) (518 SE2d 420) (1999).

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 4, 2004.

*Anthony S. Carter*, for appellant.

*W. Kendall Wynne, District Attorney, Kelly D. Kautz, Assistant District Attorney*, for appellee.