### A08A0162. BRANDEBURG v. THE STATE.
(663 SE2d 844)

ELLINGTON, Judge.

A Walton County grand jury indicted Joseph Brandeburg for theft by taking while serving as an employee of the Loganville Police Department, OCGA §§ 16-8-2 and 16-8-12 (a) (3) (penalty for theft by a government employee in breach of duty), and two counts of violation of oath by a public officer, OCGA § 16-10-1. Brandeburg filed a demurrer and plea in abatement, a demurrer and motion to quash the indictment, a motion to dismiss for violating his constitutional right to a speedy trial, and a motion to dismiss for prosecutorial vindictiveness. The superior court denied the motions, and Brandeburg appeals. For the following reasons, we affirm.

The record shows that, on October 12, 2004, Brandeburg was employed as a police officer for the Loganville Police Department. While Brandeburg was on duty, in uniform, and driving a marked police car, he went to a towing company lot to look at a camper and a motorcycle he was considering purchasing for his personal use. Brandeburg also looked into the trunk of a car that had been impounded by the Snellville Police Department. The car had been stolen, had been involved in a hit and run accident, and then had been abandoned. It is undisputed that Brandeburg was not involved

---

[6] *Siefferman v. Peppers*, 159 Ga. App. 688, 689 (1) (285 SE2d 61) (1981).
[7] See id.

in the investigation of the accident or the impoundment of the car, and there was no evidence that, as a Loganville police officer, he was authorized to look into the car's trunk or confiscate items therefrom. Even so, Brandeburg removed a "nun-chuck" and a set of brass knuckles from the car's trunk and placed the weapons in his patrol car. Brandeburg left the lot with the weapons, and he did not notify anyone at either the Loganville or Snellville police departments that he had taken possession of the weapons.

The next day, a Snellville police officer went to the lot to take an inventory of the car's contents, and a lot employee told him that Brandeburg had taken two items from the car's trunk.[1] The officer contacted the Loganville Police Department's chief of police, who asked Brandeburg about the items. It is undisputed that Brandeburg had not turned in the weapons to the police department and that he still had the items in his possession. The police chief contacted the Georgia Bureau of Investigation (GBI), which conducted an investigation.

The State subsequently indicted Brandeburg for felony theft by taking by a police officer,[2] violating his oath of office for committing the theft by taking while in the performance of his duties as a police officer, and violating his oath of office by failing to turn over the alleged contraband to the custody of the police department. Brandeburg filed a demurrer and motion to quash the indictment, a demurrer and plea in abatement, and a motion to dismiss for prosecutorial vindictiveness, as well as a motion to dismiss based upon an alleged violation of his constitutional right to a speedy trial. The court denied the motions, and Brandeburg appeals.

1. Brandeburg contends the trial court erred in not sustaining his demurrer and plea in abatement on the basis that the State failed to name a specific victim in the indictment for theft by taking.

> A special demurrer . . . attacks the form of an indictment. With respect to special demurrers, the true test of the sufficiency of the indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record

---

[1] Notably, the Snellville officer discovered marijuana in the impounded car. According to the State, however, any criminal case arising from the possession of the marijuana was "shot" due to Brandeburg's unauthorized entry into the car.

[2] Before indicting Brandeburg on the felony charges, the State indicted him on a charge of misdemeanor theft by taking. See Divisions 3 and 4, infra.

shows with accuracy to what extent he may plead a former acquittal or conviction. It is useful to remember that the purpose of the indictment is to allow defendant to prepare his defense intelligently and to protect him from double jeopardy.

(Punctuation, footnotes and emphasis omitted.) *Dennard v. State*, 243 Ga. App. 868, 870 (534 SE2d 182) (2000).

As a general rule, if an accusation charges the defendant with committing a crime against a person, the injured person should be identified in the accusation. However, where the identity of a person related to the crime is not a material part of the crime charged, the State is not required to name the person in the accusation.

(Citations omitted.) *State v. Kenney*, 233 Ga. App. 298, 299 (1) (a) (503 SE2d 585) (1998).

Under OCGA § 16-8-2, a "person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." OCGA § 16-8-1 (3) defines "property of another" as including "property in which *any person other than the accused* has an interest but does not include property belonging to the spouse of an accused or to them jointly." (Emphasis supplied.) Thus, while it is necessary for the State to prove that the stolen property belonged to someone other than the defendant in order to support a theft by taking conviction, the identity of the owner is not a material element of the crime that must be alleged and proved. See *State v. Kenney*, 233 Ga. App. at 299 (1) (a).

In this case, the indictment charged Brandeburg with unlawfully taking the "property of another, to-wit: nun-chucks and brass knuckles, with the intention of depriving said owner of said property" on October 12, 2004, while Brandeburg was employed as a police officer. In a motion hearing, Brandeburg's counsel acknowledged that the State did not yet know whether the weapons belonged to the owner of the impounded car, the person who stole the car, or an unidentified third party. He also admitted that the weapons did not belong to Brandeburg. As the trial court found, this indictment alleges all of the elements of theft by taking and

does not prevent the defendant from knowing what actions he is to defend against nor does it subject him to the

possibility [of] a subsequent prosecution with regard to the same act. The allegation in this case of the particular property alleged to have been taken and the location of the incident will prevent subsequent prosecution for the same act. Further, the defendant submitted an affidavit describing the time of the alleged incident[3] so he is clearly aware of what actions he must defend against. The defendant is in no way prejudiced by the State's omission of the name of the owner of the articles alleged to have been taken.

Because the trial court's conclusions are legally correct and supported by the record, we find no error in its denial of Brandeburg's special demurrer.

2. Brandeburg argues that the trial court erred in not sustaining his demurrer to the two counts alleging violation of his oath of office.[4] There is no merit to this alleged error.

(a) One of the counts at issue charged Brandeburg with violating his oath of office by taking possession of the weapons with the intention of depriving the owner of the property, as alleged in Count 1 of the indictment, "while in the performance of his duties as a police officer." Brandeburg argues that there could be no violation of his oath of office because there was no connection between his taking possession of the weapons and his duties as a police officer.[5] In an affidavit, however, Brandeburg admitted in judicio that the alleged theft occurred while he was "on duty as a peace officer, lawfully performing my duties, removing items from an impounded vehicle."[6] His counsel also argued during a hearing on his demurrer and motion to quash that the act of "taking items, removing items from a car in the presence of impound wrecker employees, placing them in a patrol car with the intent of placing them into the property room later" were acts that "legitimately arose out of a law enforcement duty." In addition, during a subsequent hearing, his counsel argued

---

[3] In his affidavit, Brandeburg admitted that "[o]n the incident date and time, alleged by the prosecution as October 12, 2004, I was on duty as a peace officer, lawfully performing my duties, removing items from an impounded vehicle."

[4] See OCGA § 16-10-1 ("Any public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.").

[5] See *State v. Tullis*, 213 Ga. App. 581, 582 (445 SE2d 282) (1994) (a conviction under OCGA § 16-10-1 requires that there be some connection between the offense and the officer's public duties).

[6] Brandeburg made this admission in judicio in an affidavit in support of his demurrer and motion to quash his first indictment based upon the State's failure to comply with OCGA §§ 17-7-52 and 45-11-4, which afford a public official certain rights when the State presents charges against the official to a grand jury. See Division 3 and footnotes 7 and 8, infra; see also Division 4, infra (regarding the State's first indictment of Brandeburg).

that Brandeburg was "on the lookout" for a stolen car when he went to the towing yard and that he "confiscate[d]" the weapons after finding them in the trunk of the impounded car.

Thus, given Brandeburg's admissions in judicio in the court below, his argument on appeal lacks merit. We conclude that there was a sufficient connection between Brandeburg's taking possession of the weapons and his duties as a police officer to support a charge for violating his oath of office under OCGA § 16-10-1. As Brandeburg has acknowledged, it is for the jury to determine whether he, in fact, intended to steal the weapons or, as he contends, simply removed suspected contraband from a lawfully impounded car as part of his official duties and under color of law with the intention of turning the weapons in to the proper authorities. See *State v. Greene*, 171 Ga. App. 329, 331 (320 SE2d 183) (1984) (one test of an indictment is whether, taking the alleged facts as proven, a rational juror could reasonably find that the defendant was guilty of the crimes charged). Consequently, Brandeburg has failed to show that the trial court should have sustained his demurrer on this basis. See generally *Poole v. State*, 262 Ga. 718 (425 SE2d 655) (1993) (affirming a police officer's conviction for violating his oath of office based upon evidence that he had pawned a weapon he had confiscated during a traffic stop and used the money to pay personal expenses).

(b) The other count at issue was based upon his failure to turn over custody of the weapons, which were deemed to be contraband, to the police department. Brandeburg contends that the indictment charges him with negligence by alleging that he failed to immediately turn in the weapons to the police department. He argues that the statute requires a showing of specific intent and claims that his mere failure to turn over the weapons was, "[a]t most, . . . an administrative infraction," not a crime.

> [A]n indictment is insufficient to withstand a demurrer if all of the facts which the indictment charges can be admitted and still the accused is innocent, but the indictment is sufficient, if taking the facts alleged as proven, the guilt of the accused follows as a legal conclusion.

(Citation omitted.) *State v. Greene*, 171 Ga. App. at 331. If we take the facts alleged in the indictment as proven, a rational juror could reasonably find that Brandeburg wilfully and intentionally violated his oath to faithfully administer and discharge the duties of his office by intentionally failing to turn in the weapons to authorities. Id. Thus, the indictment was sufficient, and the court did not err in denying Brandeburg's demurrer to this count. Id.

3. Brandeburg argues that the court erred in not sustaining his

demurrer and motion to quash, which were based upon allegations of misconduct by the prosecutor while presenting this case to the grand jury. As noted above, because Brandeburg was a police officer, the State afforded him the rights provided by OCGA §§ 17-7-52[7] and 45-11-4[8] to notice of the grand jury proceedings, a copy of the indictment, the opportunity to be present during the presentation of evidence, and the right to make a statement to the grand jurors. Brandeburg complains, however, that the State wilfully violated the provisions of these statutes and, as a result, the court should have sustained his demurrer. For the following reasons, we disagree.

(a) Brandeburg contends that the grand jury asked the district attorney to change the proposed indictment to a misdemeanor charge of theft by taking, but that the district attorney refused to do so. According to Brandeburg, this violated OCGA § 45-11-4 (h), which states in part that, "[a]t any time during the presentation of evidence or during deliberations, the grand jury may amend the indictment or instruct the district attorney to cause a new indictment to be drawn as in any other case."

The record shows that the grand jury asked the district attorney why the State had "dropped" the misdemeanor theft by taking charge and whether it could change the felony charges to misdemeanors. The district attorney explained to the jury why the State had charged Brandeburg with a felony and that a misdemeanor charge was not an option. The grand jury subsequently directed the district attorney to separate the three felony counts into two separate indictments, one charging Brandeburg with theft by taking and violation of his oath of office, and the other charging him with a separate count of violation of his oath of office, and the district attorney complied.

Brandeburg complains that, under these circumstances, the district attorney was required to indict him for misdemeanor theft by taking instead of a felony. We disagree. The hearing transcript does not show that the grand jury ever directed the district attorney to

---

[7] OCGA § 17-7-52 states as follows:

(a) Before an indictment against a present or former peace officer charging the officer with a crime which is alleged to have occurred while he or she was in the performance of his or her duties is returned by a grand jury, the officer shall be notified of the contemplated action by the district attorney of the county wherein the grand jury shall convene and the officer shall be afforded the rights provided in Code Section 45-11-4.

(b) The requirements of subsection (a) of this Code section shall apply to all prosecutions, whether for misdemeanors or felonies, and no such prosecution shall proceed either in state or superior court without a grand jury indictment.

[8] OCGA § 45-11-4 sets out the procedural rights due to public officers indicted by the State for alleged criminal acts performed in the administration or under the color of his or her office.

produce an indictment charging Brandeburg with a misdemeanor. Moreover, if the grand jury had disapproved of charging Brandeburg with felony theft by taking, it could have refused to indict him pursuant to the proposed indictment, but it did not. Thus, Brandeburg has failed to show that the State violated OCGA § 45-11-4 (h) or that the trial court erred in denying his motion to quash based on such alleged violation.

(b) Brandeburg contends that the court erred in denying his demurrer and motion to quash based upon the State's alleged violation of his rights under OCGA § 45-11-4 (g). The relevant portion of the statute states that

> [t]he accused shall have the right to appear before the grand jury to make such sworn statement as he or she shall desire at the conclusion of the presentation of the state's evidence. The accused shall not be subject to examination, either direct or cross, and shall not have the right individually or through his or her counsel to examine the state's witnesses.

According to Brandeburg, after he made his statement to the grand jury, he was willing to waive the protections of OCGA § 45-11-4 (g) and answer questions from the jurors, but the State improperly refused to allow him to do so.

The plain language of the statute, however, states that "the accused shall not be subject to examination, either direct or cross," and Brandeburg has failed to cite to any authority which gives him the right to avoid this limitation so that he could answer questions from the grand jurors. Further, as the trial court recognized, allowing such questioning "would be tantamount to creating an adversarial atmosphere before the Grand Jury," and would create the problem of deciding "who would have the authority to preside over the questioning by grand jury members and what, if any, limits on such questions would exist." Accordingly, we conclude the court did not err in denying the motion to quash on this basis.

(c) Brandeburg contends that, after he finished making his statement to the grand jury and left the room, the district attorney reentered the grand jury room and presented additional facts and argument outside of his presence. He asserts that this violated OCGA § 45-11-4 (g), which states in part that

> [t]he accused and his or her counsel shall have the right to be present during the presentation of all evidence and alleged statements of the accused on the proposed indictment, presentment, or accusation, after which the accused and his or her counsel shall retire instanter from the grand

jury room to permit the grand jury to deliberate upon the indictment.

The record shows that, after the State presented its witness and Brandeburg addressed the grand jury, everyone but the jury left the room so the jury could deliberate. During deliberations, the jury had legal questions for the district attorney and asked him to come back in. As noted above, among the questions was why the State had charged Brandeburg with felony theft instead of a misdemeanor, and the district attorney explained why. He also answered the jury's other questions, acting in his capacity as the grand jury's legal advisor.

Although Brandeburg contends that the district attorney improperly presented additional evidence to the jury outside of his presence, there is nothing in the record that shows that the State presented additional evidence to the grand jury regarding whether Brandeburg committed the alleged crimes as charged in the proposed indictment. Therefore, the court did not err in denying Brandeburg's motion to quash on this basis.

(d) Brandeburg also complains that the State violated OCGA § 45-11-4 (h) when it failed to provide him with a copy of the "new" indictments after the grand jury asked the State to divide the three charges between two separate indictments. OCGA § 45-11-4 (h) provides in part that, if the grand jury instructs the district attorney to draw up a new indictment, "a copy of the . . . new indictment, if it relates to the accused public official, shall be provided to the accused public official and his or her counsel."

It is undisputed that Brandeburg received a copy of the proposed indictment before it was presented to the grand jury, as required by OCGA § 45-11-4 (f),[9] and that the "new" indictments to which he refers repeated verbatim the same three charges as in the proposed indictment he had received. The only difference was that the three charges were split between two separate indictments. Under these circumstances, Brandeburg has failed to show that the State violated his rights under OCGA § 45-11-4 (h) or that the trial court erred in denying his motion to quash.

4. Brandeburg contends the court erred in refusing to grant his motion to dismiss the indictment on the basis of prosecutorial vindictiveness. When reviewing the court's ruling on such a motion, "[w]e will be bound by the trial court's findings of fact unless they

---

[9] "Any indictment brought pursuant to subsection (b) of this Code section shall specially set forth the merits of the complaint against the accused public officer. A copy of the proposed bill of indictment shall be served on the accused public officer at least 15 days before it is presented to the grand jury." OCGA § 45-11-4 (f).

are clearly erroneous." (Citation omitted.) *Sanchez v. State*, 242 Ga. App. 686, 687 (2) (530 SE2d 775) (2000).

The record shows that the State first indicted Brandeburg on a misdemeanor charge of theft by taking in March 2006. The State offered Brandeburg a plea deal if he would resign his position and agree not to seek employment as a police officer in the future. According to the court, the State insisted from the beginning of the investigation of the theft that Brandeburg must end his career as a police officer before it would close the case, because, when it is alleged that an officer has violated a criminal statute, particularly one involving theft, the officer loses his credibility and makes cases in which he was involved difficult to prosecute. Therefore, the State informed Brandeburg about its position on his future employment as a police officer even before it first indicted him for theft. The State told Brandeburg that, if he refused the plea deal, it would re-indict him on felony charges. Brandeburg refused to plead guilty under such an arrangement, and he started working in another jurisdiction as a police officer. The State then re-indicted Brandeburg for felony theft by taking by a law enforcement officer. See OCGA § 16-8-12 (a) (3) (penalty for theft by a government employee in breach of duty).

On appeal, Brandeburg argues that the fact that the State increased the severity of the charges against him after he refused to plead guilty raised a presumption of prosecutorial vindictiveness, which shifted the burden to the State to show that the decision to re-indict him was not the result of vindictiveness. Brandeburg contends the State failed to meet this burden and, therefore, the trial court should have granted his motion to dismiss. For the following reasons, however, we find that no presumption of vindictiveness arose under the circumstances presented, so that the burden of showing the absence of a vindictive motive in re-indicting Brandeburg never shifted to the State.

In *United States v. Goodwin*, the Supreme Court of the United States considered whether a presumption of prosecutorial vindictiveness should arise when a prosecutor files additional or more serious charges against a defendant after the defendant refuses to plead guilty to lesser charges during plea negotiations. *United States v. Goodwin*, 457 U. S. 368 (102 SC 2485, 73 LE2d 74) (1982). The Court contrasted such a situation from one in which a prosecutor adds additional charges after a defendant successfully appeals from a conviction, a situation from which a presumption of vindictiveness might arise because of the perception that the prosecutor was punishing the defendant for appealing his conviction.[10] Id. at 374-380

---

[10] See, e.g., *Blackledge v. Perry*, 417 U. S. 21, 28-29 (I) (94 SC 2098, 40 LE2d 628) (1974) (finding that it was not constitutionally permissible for the State to respond to the defendant's

(II). In a pre-trial, plea negotiation setting, however, the Court acknowledged that there is no element of punishment, "so long as the accused is free to accept or reject the prosecution's offer." (Citation and punctuation omitted.) Id. at 378 (II). In that situation,

> additional charges obtained by a prosecutor could not necessarily be characterized as an impermissible "penalty." Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation — in often what is clearly a "benefit" to the defendant — changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness." An initial indictment — from which the prosecutor embarks on a course of plea negotiation — does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded. . . . A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct.

(Footnotes omitted.) *United States v. Goodwin*, 457 U. S. at 379-382 (II), (III).

Thus, the fact that, in this case, the State could have indicted Brandeburg on the felony charges in the original indictment, but decided to pursue a negotiated plea on a lesser charge instead, did not preclude it from re-indicting him on the felony charges after plea negotiations failed. Under these circumstances, no presumption of prosecutorial vindictiveness arose. *United States v. Goodwin*, 457 U. S. at 382-383 (III); see also *Larochelle v. State*, 219 Ga. App. 792, 794 (2) (466 SE2d 672) (1996) (when the State re-indicted the defendant for more serious charges after he filed various pre-trial motions and demands, this Court relied upon *Goodwin* and ruled that no presumption of vindictiveness arose; it affirmed the trial

---

invocation of his statutory right to appeal by bringing a more serious charge against him prior to the re-trial). In *Goodwin*, the Court recognized that the due process violation present in *Blackledge* "lay not in the possibility that a defendant might be deterred from the exercise of a legal right[,] but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." (Citation and punctuation omitted.) 457 U. S. at 378 (II).

court's finding that the defendant had failed to carry his burden of demonstrating actual prosecutorial vindictiveness).

5. Brandeburg argues that the court erred in refusing his motion to dismiss based upon a violation of his constitutional right to a speedy trial. He claims that the State first learned of the incident at issue in December 2004, but did not file the first indictment until March 2006, and did not re-indict him until January 2007, a delay he contends is clearly unreasonable.

> A court must balance four factors to determine whether a defendant's constitutional right to a speedy trial has been denied: (a) the length of the delay, (b) the reason for the delay, (c) the defendant's assertion of his right, and (d) the prejudice to the defendant. The test recognizes that the burden of protecting the right to a speedy trial does not rest solely with an accused. On appeal, we review the denial of a defendant's constitutional speedy trial claim for [an] abuse of discretion.

(Footnotes omitted.) *Beasley v. State*, 260 Ga. App. 74, 75 (579 SE2d 19) (2003). Further,

> [t]he test for whether a defendant has been prejudiced requires the court to consider three interests: preventing oppressive pretrial incarceration, minimizing a defendant's anxiety and concern, and limiting the possibility that the defense will be impaired.

(Footnote omitted.) Id. at 76.

As noted above, the record shows that the alleged theft occurred in October 2004. Brandeburg was not arrested at that time. The GBI and the district attorney's office conducted investigations over the next several months. In March 2006, the State indicted Brandeburg, and Brandeburg was arrested on March 28, 2006. While Brandeburg was out on bond, he negotiated with the State for a plea deal. Brandeburg never filed a motion for speedy trial during this time. When plea negotiations were unsuccessful, the State re-indicted Brandeburg on felony charges in January 2007. Brandeburg was arrested and released on bond again. Brandeburg filed his motion to dismiss based upon the violation of his constitutional right to a speedy trial on March 30, 2007, and the court conducted a motion hearing on April 17, 2007.

In its order denying the motion, the court found that

> [t]he length of any delay has not prejudiced [Brandeburg]. The prospects for all evidence being available and [intact] are very high. It is not a case of disappearing witnesses or

weak memories because most of what occurred has been memorialized in reports from certain investigations. The State has shown that any delay in the case has justification in the fact that [Brandeburg] himself occasioned some of the very delay he is complaining about. Real time started upon the arrest of [Brandeburg] the first time. Only thirteen months have elapsed from that first arrest to the hearing [on his motion to dismiss]. In the meantime, other legal maneuvers and actual litigation [have] taken place. This Court cannot find from a totality of the circumstances that [Brandeburg's] Constitutional right to a speedy trial has been abridged in any way.

Given that there was an ongoing official investigation between the time of the alleged theft and Brandeburg's initial arrest, Brandeburg was released on bond shortly after he was arrested, he did not file a statutory demand for speedy trial, he has not shown any evidence that the State deliberately delayed the trial in order to hamper the defense, he has not shown that the delay impaired his defense, and he first brought his motion to dismiss on this ground in March 2007, we agree with the trial court's conclusion that there has been no violation of Brandeburg's constitutional right to a speedy trial. *Oliver v. State*, 262 Ga. App. 637, 639-641 (4) (586 SE2d 333) (2003); *Beasley v. State*, 260 Ga. App. at 75-76.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JUNE 25, 2008 — 

*Donald C. English*, for appellant.

*W. Kendall Wynne, District Attorney, David E. Boyle, Assistant District Attorney*, for appellee.