**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 13, 2015**

# In the Court of Appeals of Georgia

A15A1248. REYNOLDS v. THE STATE.

BRANCH, Judge.

Jeremy Reynolds was tried by a DeKalb County jury and convicted on two counts of violating his oath as a public officer.[1] He now appeals, claiming that the trial court erred in denying his motion for a directed verdict of acquittal because the evidence was insufficient to sustain his conviction. Reynolds further contends that the trial court violated his right to due process by limiting the number of questions that could be asked during general voir dire. For reasons explained below, we find no error and affirm.

"On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most

---

[1] The jury acquitted Reynolds of one count of aggravated sodomy.

favorable to the jury's guilty verdict." *Marriott v. State*, 320 Ga. App. 58, 58 (739 SE2d 68) (2013) (citation omitted). So viewed, the record shows that from March 2008 through at least January of 2010, Reynolds served as a DeKalb County police officer. In September 2009, Reynolds, while in uniform and on patrol, stopped L. W. as she was walking down a street at approximately 1:30 a. m. Reynolds asked L. W. if she had any drugs in her possession; L. W. responded affirmatively, removed a small bag of marijuana from her pocket, and placed it on the back of Reynolds's patrol car. Reynolds then told L. W. that either he could take her to jail or she could perform oral sex on him. When L. W. elected not to go to jail, Reynolds drove her in his patrol car to behind a nearby building, where L. W. performed oral sex on the officer.

In January 2010, Reynolds performed a traffic stop of a car driven by Y. R. A check of Y. R.'s license showed an outstanding warrant for her arrest resulting from her failure to pay a fine imposed for a traffic violation. Reynolds handcuffed Y. R. and placed her in the back of his patrol car. He then proceeded to tell Y. R. that he did not want to do the paperwork associated with her arrest; that because it was Friday, if he took her to jail she would likely be there over the weekend; and that if he arrested her, her car would be impounded. Reynolds then removed the handcuffs from

2

Y. R. and told her that if she showed him her breasts, he would not arrest her. When Y. R. refused, Reynolds handcuffed her a second time and pulled up her shirt. During the incident, Y. R. observed that the officer's name plate said "Reynolds." After molesting Y. R., Reynolds arrested her and took her to jail.

Both of Reynolds's victims eventually reported these incidents to the DeKalb County Police, and each victim subsequently identified Reynolds from a photographic line up as her assailant. Following an investigation, officers with the county's Special Victims Unit questioned Reynolds. During that interview, which was recorded and played for the jury at trial, Reynolds admitted that he had given both victims a choice between complying with his request for sexual contact or going to jail. Reynolds was subsequently arrested and indicted on one count of aggravated sodomy and two counts of violating his oath as a public officer.

Prior to jury selection, the trial court informed both parties that a number of general questions had been posed to the jury by way of a written questionnaire and that the responses of each potential juror would be provided to counsel. The trial court further informed the parties that each could ask no more than ten questions during general voir dire. The court imposed no limit on the number of questions that either side could pose to a potential juror when questioning that juror individually.

3

Defense counsel objected to the limitation on questions that could be asked during general voir dire, but the trial court overruled that objection.

With respect to Reynolds's alleged violation of his oath of office, the State presented evidence showing that on March 11, 2008, Reynolds took the "Sworn Oath of Office" of the DeKalb County Police Department and that he signed a written copy of the same. In that oath, Reynolds swore, among other things, that he would "faithfully enforce the laws of the State of Georgia and . . . faithfully perform all the duties of my office, and . . . faithfully observe all the rules, orders[,] and regulations of the DeKalb County Police Department." Officer Mark West, the chief instructor at the DeKalb County Police Academy, administered the oath to Reynolds and witnessed Reynolds's signature on the written copy. West testified that all DeKalb County Police Department recruits must complete the Academy training, which takes 26 weeks. On the first day of Academy training, all recruits are issued an employee manual containing the rules and regulations of the DeKalb County Police Department. The rules and regulations contained in the employee manual address what is appropriate and inappropriate conduct for police officers. According to West, it would be a violation of DeKalb County Police Department rules for a police officer to have either consensual or nonconsensual sex while on duty; to solicit sex or any

4

kind of sexual favor; to barter over whether to take someone to jail; and to ask a woman in custody to show the officer her breasts.

At the close of the State's case, Reynolds moved for a directed verdict of acquittal. In support of this motion, defense counsel argued that the State had failed to prove that Reynolds had violated his oath of office because it had failed to introduce into evidence a copy of any specific rule, regulation, or order that Reynolds's alleged conduct had violated. The trial court denied that motion, finding the State had presented sufficient evidence to submit these counts to the jury.

Reynolds then testified in his own defense and acknowledged that L. W. had performed oral sex on him while he was on duty, but insisted that the contact had been consensual. Reynolds denied that the incident with Y. R. had occurred. On cross-examination, Reynolds acknowledged that having consensual sex while on duty would be inappropriate conduct for an officer; that he had previously engaged in consensual sex while on duty; that if he had offered L. W. a choice between going to jail and performing oral sex on him, that conduct would violate his oath of office; and that if he had offered Y. R. a choice between going to jail and showing him her breasts, that conduct would violate his oath of office.

The jury acquitted Reynolds of aggravated assault but found him guilty of the two counts of violating his oath of office. The trial court entered judgment on the jury's verdict, and Reynolds now appeals his conviction.

1. Reynolds first argues that the trial court erred in denying his motion for a directed verdict of acquittal because the evidence was insufficient to convict him of violating his oath of office. We disagree.

With respect to this claim of error,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In determining that question, we consider the inferences that can be logically derived from the evidence presented at trial. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*King v. State*, 325 Ga. App. 777, 781 (1) (755 SE2d 22) (2014) (citation and punctuation omitted). See also *Dorsey v. State*, 279 Ga. 534, 542 (3) (615 SE2d 512) (2005) ("[t]he standard for reviewing a denial of a motion for a directed verdict of acquittal is the same test to be used when the sufficiency of the evidence is challenged").

The code section under which Reynolds was convicted, OCGA § 16-10-1, makes it illegal for any public officer to "willfully and intentionally violate[ ] the terms of his oath as prescribed by law." As this Court has previously explained, to convict an officer of violating OCGA § 16-10-1, the State must prove that the defendant was actually administered an oath, that the oath was "prescribed by law, and that the officer violated the terms of that oath. See *Bradley v. State*, 292 Ga. App. 737, 740 (2) (665 SE2d 428) (2008). On appeal, Reynolds does not dispute the terms of the oath, that he was administered the oath, or that the oath was one prescribed by law. Rather, he contends that the State failed to prove that he violated that part of the oath which required him to "faithfully observe all the rules, orders[,] and regulations of the DeKalb County Police Department." Specifically, Reynolds argues that the State could not prove a violation of this part of his oath without introducing into evidence a certified copy of the rule, order, or regulation he allegedly violated. Reynolds's argument as to the sufficiency of the evidence fails.

The cases relied on by Reynolds to support the proposition that the State was required to introduce a certified copy of one or more specific rules, orders, or regulations that his conduct allegedly violated are inapposite. Unlike the case at hand, which involves a criminal prosecution under state law, the cases relied upon by

Reynolds each involved the attempted enforcement of a city or county ordinance or regulation. See *Sweeney v. Lowe*, 325 Ga. App. 883, 883 (755 SE2d 813) (2014) (where plaintiff's personal-injury lawsuit was predicated on the defendant's alleged violation of a county ordinance, the plaintiff bore the burden of proving the terms of that ordinance by introducing into evidence a certified copy of the same); *Morrow v. Angkawijana*, LLC, 327 Ga. App. 1, 5-6 (755 SE2d 561) (2014) (same); *Reed v. State*, 229 Ga. App. 817, 818-819 (a) (495 SE2d 313) (1997) (where defendant was charged in state court with violating a city ordinance, the prosecution was required to prove the terms of that ordinance by introducing a certified copy thereof). Thus, each of these cases was applying the well-established rule that "[n]either the superior courts nor the appellate courts [of this State] can *adjudicate a claim or defense based on* a city [or county] ordinance unless the ordinance has been properly presented." *Whitfield v. City of Atlanta*, 296 Ga. 641, 641 (769 SE2d 76) (2015) (emphasis supplied). See also Davis & Schulman's Ga. Practice & Procedure, §7:9 (2015-2016 ed.) ("[p]roof of law or regulations, other than [OCGA] and state regulations promulgated under the Administrative Procedures Act and published by the Secretary of State as the Official Regulations of the State of Georgia, must be pled and proved

. . . , because judicial notice cannot be taken of rules, regulation, and ordinances not authorized for publication").

Reynolds, however, was not being prosecuted for a violation of a DeKalb County rule, ordinance, or regulation. The State, therefore, was not required to introduce into evidence the terms of any such rule, ordinance, or regulation. Instead, the prosecution had to prove only that Reynolds engaged in the conduct alleged in the indictment and that such conduct violated his oath of office. Here, Reynolds's admitted he took an oath that required him to "faithfully observe all the rules, orders[,] and regulations of the DeKalb County Police Department." Additionally, Officer West testified that these rules, orders, and regulations were contained in an employee manual given to all recruits, including Reynolds, at the time they entered the police academy; that Reynolds completed the 26-week-long police academy training course, during which these rules, orders, and regulations were reviewed in-depth; and that the conduct of which Reynolds was accused would constitute a violation of those rules, orders, and regulations. Moreover, Reynolds himself admitted at trial that the conduct of which he was accused would constitute a violation of his oath of office. Accordingly, the evidence was sufficient to sustain

9

Reynolds's convictions for violating OCGA § 16-10-1.[2] See *Bradley*, 292 Ga. App. at 740-741 (2) (testimony by a witness with the requisite knowledge that certain conduct would constitute a violation of the oath of office taken by the defendant, a corrections officer, was sufficient to convict the defendant of violating OCGA § 16-10-1).

2. Reynolds also contends that the trial court erred in limiting the number of his general voir dire questions to no more than ten. Again, we disagree.

---

[2] We also note that Reynolds's oath of office required him to "faithfully perform all the duties of [his] office." Although the indictment did not charge Reynolds with violating this part of his oath, the evidence would have supported a conviction on such a charge. Specifically, based on the evidence, the jury could have concluded that by abusing his authority in an effort to coerce sexual favors from women who were subject to arrest, Reynolds failed to faithfully perform the duties of his office. See *Gaskins v. State*, 318 Ga. App. 8, 11-12 (2) (733 SE2d 338) (2012) (evidence showing that police officer abused her authority by accessing a police department database to obtain the personal identification information of a third party and then using that information to commit financial identity fraud showed that she violated that part of her oath requiring her to "faithfully perform and discharge the duties of [her] position"). See also *Brandeburg v. State*, 292 Ga. App. 191, 195 (2) (b) (663 SE2d 844) (2008) (indictment was sufficient to charge a violation of OCGA § 16-10-1 where it alleged that the officer's conduct in failing to turn in weapons seized during a police raid constituted a violation of his oath of office, which required him to "faithfully administer and discharge the duties of his office"); *Murkerson v. State*, 264 Ga. App. 701, 702 (2) (592 SE2d 184) (2003) (indictment was sufficient to charge a violation of OCGA § 16-10-1 where it alleged that a jailer had delivered cigarettes to an inmate in exchange for marijuana; such conduct, if proven, would violated that part of the jailer's oath of office requiring him to "'well and truly perform' his job").

10

The sole purpose of voir dire is to provide both parties with an opportunity to determine "the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination." *Sallie v. State*, 276 Ga. 506, 510 (3) (578 SE2d 444) (2003) (citation and punctuation omitted). See also *Henderson v. State*, 251 Ga. 398, 399-400 (1) (306 SE2d 645) (1983) ("the larger purpose" of voir dire "is to enable counsel to identify those prospective jurors counsel desires to remove from the panel by use of peremptory strikes as opposed to challenges for cause"); OCGA § 15-12-133.[3] While a defendant must be "permitted

---

[3] That statute provides, in relevant part,

> In all criminal cases, both the state and the accused shall have the right to an individual examination of each prospective juror from which the jury is to be selected prior to interposing a challenge. The examination shall be conducted . . . in criminal cases after the usual voir dire questions have been put by the court. In the examination, the counsel for either party shall have the right to inquire of the individual prospective jurors examined touching any matter or thing which would illustrate any interest of the prospective juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the prospective juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the prospective juror might have respecting the subject matter of the action or the counsel or parties thereto, and the religious, social, and fraternal connections of the prospective juror.

11

to ask sufficient questions to determine the fairness and impartiality of the prospective jurors," *Terrell v. State*, 276 Ga. 34, 38 (3) (572 SE2d 595) (2002), the appropriate scope of voir dire in a particular case is left to the sound discretion of the trial judge. *Arrington v. State*, 286 Ga. 335, 338 (7) (687 SE2d 438) (2009). And absent some showing that the court abused its discretion, we presume its rulings as to the scope of voir dire are correct. *Meeks v. State*, 269 Ga. App. 836, 836-837 (1) (605 SE2d 428) (2004), citing *Gatlin v. State*, 236 Ga. 707, 708 (2) (225 SE2d 224) (1976). See also *Ellington v. State*, 292 Ga. 109, 127 (7) (b) (735 SE2d 736) (2012) ("appellate courts should give substantial deference to the decisions made by trial judges, who oversee voir dire on a regular basis, are more familiar with the details and nuances of their cases, and can observe the parties' and the prospective jurors' demeanor"). Accordingly, a criminal defendant alleging that the trial court erred in limiting his voir dire bears the burden of demonstrating that an abuse of discretion occurred – i.e., the defendant must show that the trial court prevented him from asking one or more questions that would have allowed him to explore a potential juror's bias. See *Williams v. State*, 287 Ga. App. 361, 362 (2) (651 SE2d 768) (2007) ("[i]n criminal appeals, as in civil ones, the burden is on the appellant" to show his

OCGA § 15-12-133.

12

asserted error "affirmatively by the record") (citation and punctuation omitted); *Sanders v. State*, 204 Ga. App. 37, 38 (1) (419 SE2d 24) (1992). If the defendant makes such a showing, the burden then shifts to the State to "show that it is 'highly probable' that the limitation of voir dire did not contribute to the verdict."*Hunt v. State*, 215 Ga. App. 677, 677 (451 SE2d 797) (1994).

Here, Reynolds has failed to show any abuse of discretion by the trial court in limiting his general voir dire. Although Reynolds objected at trial to the ten-question limit for general voir dire, he did not identify for the trial court any questions he wished to ask during general voir dire that would have put him over the ten-question limit. Moreover, Reynolds was allowed to pose as many questions as he liked when each of the potential jurors was questioned individually. And a review of the record shows that the relatively lengthy voir dire which occurred in this case "was sufficient to ascertain the fairness and impartiality of the prospective jurors." *Sallie*, 276 Ga. at 510 (3) (footnote omitted). Accordingly, we find no abuse of discretion by the trial court in limiting general voir dire. Id. See also *Terrell*, 276 Ga. at 38 (3) (trial court did not abuse its discretion in limiting voir dire where the defendant "was permitted to ask sufficient questions to determine the fairness and impartiality of the prospective jurors") (footnote omitted).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur*.