**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 2, 2018**

# In the Court of Appeals of Georgia

A17A1605. TAYLOR v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Anthony Bernard Taylor was convicted of possession with intent to distribute crack-cocaine (OCGA § 16-13-30). Taylor moved for a new trial, which the trial court denied. On appeal, Taylor contends (1) the evidence was insufficient to sustain his drug conviction ; and (2) the trial court abused its discretion in limiting his time for voir dire with certain prospective jurors. Discerning no error, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence shows that on the evening of October 14, 2009, four members of the Atlanta Police Department's Red Dog Unit, a specialty team which handles "street-level" drug dealers in high drug

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 5660) (1979).

crime areas, were conducting an unrelated traffic stop when they heard loud screaming and banging coming from a house up the street.

The officers moved toward the house, and discovered Taylor standing on the front porch. As one of the officers approached, Taylor threw something off the side of the porch that looked like a sandwich bag. One of the other officers went to the side of the home and retrieved a plastic bag with a white substance inside that the officers believed to be crack-cocaine. Officers also found a scale in Taylor's back pocket while searching him. Moreover, while the officers were waiting for a prisoner transport van to arrive, Taylor told one of the officers that although he sells marijuana on occasion, he does not sell cocaine. Taylor was subsequently arrested for possession of crack-cocaine and was charged with possession with intent to distribute.[2] Taylor was convicted of that charge, and this appeal followed the trial court's denial of Taylor's motion for new trial.[3]

---

[2] The officers arrested Taylor for possession of crack-cocaine, rather than possession with intent to distribute, because Taylor was cooperative throughout the incident. It is the prerogative of the District Attorney to decide how to charge a defendant. *State v. Wooten*, 273 Ga. 529, 531 (2) (543 SE2d 721) (2001).

[3] The trial court granted Taylor's motion for an out-of-time appeal.

2

1. Taylor contends that the evidence was insufficient to convict him of possession with intent to distribute. We disagree.

Although OCGA § 16-3-30 does not specify a quantity of drugs necessary to support a conviction for possession with intent to distribute

> . . . mere possession of cocaine, without more, will not support a conviction for possession with intent to distribute. We have considered various kinds of additional evidence as proof of intent to distribute, including drug measuring and weighing paraphernalia, the packaging of the contraband, possession of certain amounts or denominations of currency, a prior possession with intent to distribute conviction, and expert testimony that the amount of contraband possessed was consistent with larger amounts usually held for sale rather than for personal use.

(Citation omitted.) *Tate v. State*, 230 Ga. App. 186, 187 (1) (b) (495 SE2d 658) (1998). Evidence concerning the quantity of drugs that is consistent with an intent to distribute can come in the form of the expert testimony of an officer whose drug training and experience has been tendered, even if the officer has not been specifically admitted as an expert. *Burse v. State*, 232 Ga. App. 729, 730 (1) (503 SE2d 638) (1998).

Here, after recovering the bag dropped by Taylor, the drug officers weighed it with the substance inside and it weighed 3.6 grams. Subsequent testing by the

Georgia Bureau of Investigation Crime Lab revealed that the substance was 3.19 grams of crack-cocaine. While testifying, one of the officers opined that, based on his 11 years of training and experience, the quantity possessed by Taylor was not for personal use, but rather was for distribution. He further testified that each gram of crack-cocaine can provide roughly ten hits, meaning that the crack-cocaine possessed by Taylor amounted to more than thirty hits. Another officer from the drug unit who had been on the scene testified at trial that the cocaine was packaged the way it typically would be prior to being broken up for sale in individual pieces.

Moreover, after Taylor was handcuffed, the drug unit officers discovered a mini digital scale in Taylor's back pocket. One of the officers testified at trial that based on his training, scales such as the one found on Taylor are often used in drug transactions to determine the weight of the drugs. There was also white residue on the scale that appeared to be crack cocaine to an officer who had seen the drug "thousands of times." Additionally, Taylor admitted to one of the drug officers that he sold marijuana.

Here, Taylor does not dispute on appeal that he was in possession of the drugs, rather, he argues only that the evidence was insufficient to demonstrate an intent to distribute. We disagree. The evidence presented here was sufficient for the jury to

infer Taylor's intent to distribute. First, an officer with years of experience testified that the amount of crack-cocaine possessed by Taylor was enough for thirty individual hits, which was consistent with distribution rather than personal use. Second, Taylor was in possession of a scale, which one of the drug officers testified, in his experience, is often used in drug transactions to weigh drugs. Moreover, the scale was coated in residue and a drug officer testified that based on his experience, that residue appeared to be crack-cocaine.[4] Third, Taylor admitted to police that he sold drugs, even though he denied selling crack-cocaine.

Although the evidence in this case was circumstantial, it was sufficient to exclude every reasonable hypothesis except for Taylor's guilt. *Tate*, supra, 230 Ga. App. at 187 (1) (a). Therefore, we conclude that there was sufficient evidence to support Taylor's conviction.

2. Taylor next contends that the trial court abused its discretion in limiting his time for voir dire with certain jurors. Again, we disagree.

---

[4] Not only did the State present evidence of the training and experience of the officers sufficient to permit them to provide opinion testimony about the quantity of drugs, Taylor cross-examined the officers on this experience but did not object that it was insufficient for their testimony to be admissible.

"The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination." (Citation omitted.) *Sallie v. State*, 276 Ga. 506, 510 (3) (578 SE2d 444) (2003).

> In all criminal cases, both the state and the accused shall have the right to an individual examination of each prospective juror from which the jury is to be selected prior to interposing a challenge . . . In the examination, the counsel for either party shall have the right to inquire of the individual prospective jurors examined touching any matter or thing which would illustrate any interest of the prospective juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the prospective juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the prospective juror might have respecting the subject matter of the action or the counsel or parties thereto, and the religious, social, and fraternal connections of the prospective juror.

OCGA § 15-12-133. However, "[c]ontrol of the voir dire examination is within the sound discretion of the trial court and the court's discretion will not be interfered with unless the record shows a manifest abuse of that discretion." (Citation omitted.) *Bramble v. State*, 263 Ga. 745 (2) (438 SE2d 619) (1994); see also *Reynolds v. State*, 334 Ga. App. 496, 501 (2) (779 SE2d 712) (2015) ("While a defendant must be

permitted to ask sufficient questions to determine the fairness and impartiality of the prospective jurors, the appropriate scope of voir dire in a particular case is left to the sound discretion of the trial judge. And absent some showing that the court abused its discretion, we presume its rulings as to the scope of voir dire are correct.") (citations and punctuation omitted). The defendant bears the burden of showing that the trial court "prevented him from asking one or more questions that would have allowed him to explore a potential juror's bias." *Reynolds*, supra, 334 Ga. App. at 501-502 (2). "If the defendant makes such a showing, the burden then shifts to the State to show that it is highly probable that the limitation of voir dire did not contribute to the verdict." (Citation and punctuation omitted.) Id. at 502.

Here, the trial court limited Taylor's voir dire of five prospective jurors, however, only one of those jurors was seated on the jury.[5] Pretermitting whether the trial court erred in limiting voir dire as to the four individuals who were not selected for the jury, any error was harmless as "it is highly probable that the limitation of voir dire did not contribute to the verdict," given that those individuals did not participate in the verdict. *Reynolds*, supra, 334 Ga. App. at 502 (2).

---

[5] Taylor argues that the trial court imposed a 5 minute limitation on the individual voir dire of each witness. Although this may be a fair inference from the record, the trial court never announced such a limitation on the record.

With regard to the remaining individual who was seated on the jury, we cannot say that the trial court abused its discretion. During the individual voir dire - which was in addition to the general voir dire conducted of the entire panel - both the State and Taylor covered multiple topics, including the juror's personal relationship with a former prosecutor and law enforcement; his profession; his experience as the victim of a crime and his feelings on the police's response to the crime; his feelings on the conviction of the man who committed that crime; his wife's profession; his wife's relationships with law enforcement; his lack of a religious affiliation; his political affiliation including a self-ranking of his views on social and fiscal matters; his feelings about a talk radio host; his wife's political affiliation; his wife's educational background; and his prior experience in which he was called for jury service but not selected. When Taylor started to question the juror about the number of times he had previously been called for jury service, the trial court interrupted and told Taylor to move on to the next juror over Taylor's objection that he had not completed asking his questions.

After viewing the record, we conclude that the voir dire conducted of this juror "was sufficient to ascertain the fairness and impartiality" of the juror. See *Sallie*, supra, 276 Ga. at 510 (3). We do not find that inquiry into the number of times an

8

individual was previously called for jury service bears any relevance to the juror's ability to be impartial towards the case to be tried. Other than this one interrupted question, Taylor did not articulate on the record below or on appeal any questions which he was prevented from asking that were necessary to discover the juror's ability to be impartial. For all of these reasons, we find no manifest abuse of discretion.

For the foregoing reasons, we find the evidence was sufficient to sustain Taylor's conviction, and the trial court did not manifestly abuse its discretion in its limitation of voir dire with the juror. Accordingly, the trial court properly denied Taylor's motion for new trial.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur*.